[No. 12976. In Bank. — July 1, 1889.]

NANCY PAYNE ET AL., APPELLANTS, *v.* W. D. ENGLISH ET AL., RESPONDENTS.

DEED — DESCRIPTION — BOUNDARY — COURSES, DISTANCES, AND QUANTITY — STREET AS MONUMENT — WATER LOT. — Before the rule can be applied in the construction of deeds, that in cases of disputed boundaries, courses, distances, and quantity must give way to monuments, the monuments must be fixed and certain, and the place where the alleged monuments were at the time of the conveyance must be satisfactorily located. The line of a street covered by the waters of a bay, and which had no definite dimensions or boundaries at the time of the conveyance, cannot control the other descriptive parts of the conveyance of a water lot.

ID. — DEED FROM MUNICIPAL CORPORATION — EVIDENCE — MAPS. — In ascertaining the boundaries of land conveyed by deed from the city of San Francisco, a map referred to in the deed, certified and indorsed by the mayor and city surveyor, and showing the land conveyed by the deed to conform to the description thereof as located upon the map, is admissible in evidence for the grantee; but other maps made subsequently to the date of the conveyance, and showing a different description and smaller quantity of the lots conveyed, are not admissible against the grantee, being the declarations of third parties, who could not bind the grantee.

STATE HARBOR COMMISSIONERS — JURISDICTION OVER NAVIGABLE WATERS — CHANNEL STREET — STATE GRANT OF WATER-LOT PROPERTY. — The grant by the state of its beach and water-lot property in the bay of San Francisco to the city of San Francisco, by the act of March 26, 1851, did not surrender the control of the state over the navigable waters of the bay of which Channel Street is a part. *People v. Williams,* 64 Cal. 498, affirmed.

ID. — ERECTION OF WHARF — INJUNCTION AGAINST STATE HARBOR COMMISSIONERS — EMINENT DOMAIN. — The state harbor commissioners may be enjoined from erecting a wharf upon a water lot which is the property of private persons.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Cope, Boyd & Fifield,* for Appellants.

Monuments should only control courses, distances, and quantity when they are more stable and certain. The more certain part of the description should control.

(*Vance* v. *Fore*, 24 Cal. 436; *Piercy* v. *Crandall*, 34 Cal.. 340; *Winans* v. *Cheney*, 55 Cal. 569; *Walsh* v. *Hill*, 38 Cal. 486; *De Rutte* v. *Muldrow*, 16 Cal. 514; *Wade* v. *Deray*, 50 Cal. 376; *Drew* v. *Swift*, 46 N. Y. 207; *Higinbotham* v. *Stoddard*, 72 N. Y. 98; *Danziger* v. *Boyd*, 53 N. Y. Sup. Ct. 398; *Browning* v. *Atkinson*, 37 Tex. 633; *Bagley* v. *Morrill*, 46 Vt. 94; *Lincoln* v. *Edgecombe*, 28 Me. 275.) The Eddy map referred to in plaintiff's deed is to be treated as part of it. (*Seaward* v. *Malotte*, 15 Cal. 304; *Vance* v. *Fore*, 24 Cal. 436; *Chapman* v. *Polack*, 70 Cal. 495; *Burr* v. *Dana*, 22 Cal. 11.) The water-lot act granted the whole property to the city, streets and all. (*Hyman* v. *Read*, 13 Cal. 445; *Friedman* v. *Nelson*, 53 Cal. 589.) Channel Street was not dedicated by that act, and then only existed as marked on the Eddy map. (*People* v. *Kruger*, 19 Cal. 411; *Burr* v. *Dana*, 22 Cal. 11.) The admission of later maps was error. Property rights cannot be destroyed in that way. The property of plaintiffs cannot be taken or damaged for public use without compensation. (*Reardon* v. *San Francisco*, 66 Cal. 492; *Shirley* v. *Bishop*, 67 Cal. 543; *Atlanta* v. *Green*, 67 Ga. 386; *Hot Springs R. R. Co.* v. *Williamson*, 45 Ark. 429; *Rigney* v. *Chicago*, 102 Ill. 64.) The state has no constitutional power to control or obstruct the streets of a city by wharves or other means. (*People* v. *Lynch*, 51 Cal. 15; 21 Am. Rep. 677; *Bank of Sonoma* v. *Fairbanks*, 52 Cal. 196; *Brady* v. *King*, 53 Cal. 44; *People* v. *Houston*, 54 Cal. 536; *Schumacker* v. *Toberman*, 56 Cal. 508; *People* v. *Bartlett*, 67 Cal. 156.) The beach and water-lot property is entitled to the same protection from invasion by state authority as any lands of private owners. (*Grogan* v. *San Francisco*, 18 Cal. 591, 612–614.) The case of *People* v. *Williams*, 64 Cal. 498, should be overruled. The fact that the persons injured by the acts of public officers have a possible remedy at law against such officers will not deprive them of relief in equity. (*Mohawk and Hudson R. R. Co.* v. *Artcher*, 6 Paige, 83; *Oakley* v. *Trustees of Williamsburgh*, 6 Paige,

262; *Belknap* v. *Belknap*, 2 Johns. Ch. 463; 7 Am. Dec. 548; *Livingstone* v. *Livingstone*, 6 Johns. Ch. 497; 10 Am. Dec. 353; *Bradley* v. *Commissioners*, 2 Humph. 428; 37 Am. Dec. 563.)

*T. C. Coogan,* for Respondents.

The grant of beach and water-lot property did not surrender state control over the navigable waters of Channel Street. (Stats. 1851, p. 307, sec. 6; *People* v. *Williams,* 64 Cal. 498; *Weber* v. *Board etc.,* 18 Wall. 57.) Courts in construing deeds may look at the acts of the parties as a clew to their intentions. The plaintiffs constructed no wharf on the thirty-foot strip; the official maps of the city show that it is part of Channel Street, and for twenty-five years the state harbor commissioners have exercised jurisdiction over it. Indeed, it would be strange if the state had conveyed its interest in this thirty-foot strip. It is the space between high and low water mark, and when the state makes a grant bounded by navigable waters, it extends to high-water mark. (Civ. Code, sec. 830; *Moore* v. *Massini,* 37 Cal. 432; *Kimball* v. *Macpherson,* 46 Cal. 104; Gould on Waters, secs. 36, 37.) The maps were admissible to show the acts of the city to aid in the construction of its deed. The state has absolute control over all land below high-water mark under all navigable waters. (*Paterson etc. R'y Co.* v. *Stevens,* 10 Am. Law Reg. 165; Const. 1879, art. 15, sec. 2.) Plaintiffs have no interest in Channel Street. Their rights are bounded by it. (*Payne* v. *McKinley,* 54 Cal. 532; *Severy* v. *C. P. R. R. Co.,* 51 Cal. 194.) They have no riparian rights. (*Dana* v. *Jackson St. Wharf Co.,* 31 Cal. 118; 89 Am. Dec. 164; *Weber* v. *Board etc.,* 18 Wall. 57; *Paterson etc. R'y Co.* v. *Stevens,* 10 Am. Law Reg. 165.) They can maintain no action in respect to the obstruction of Channel Street, not being specially injured. (*George* v. *North Pacific T. Co.,* 50 Cal. 589; *Payne* v. *McKinley,* 54 Cal. 532; *Parrot* v. *Floyd,* 54 Cal. 534;

*Marini* v. *Graham*, 67 Cal. 130; *O'Brien* v. *Norwich and Worcester R. R.*, 17 Conn. 371; *Aram* v. *Schallenberger*, 41 Cal. 449.) Injunction will not lie to prevent performance of a governmental duty. (*Moore* v. *City of Atlanta*, 70 Ga. 611; *Stetson* v. *Chicago and Evanston R. R. Co.*, 75 Ill. 74; Civ. Code, sec. 3423.) The legislature may direct the uses to which streets of a municipality are to be devoted. (Dillon on Municipal Corporations, secs. 656, 657; *People* v. *Walsh*, 96 Ill. 232; 36 Am. Rep. 135; *Polack* v. *Orphan Asylum*, 48 Cal. 490; *Fergusen* v. *San Francisco*, 36 Cal. 595; *Sinton* v. *Ashbury*, 41 Cal. 525; *Brook* v. *Horton*, 68 Cal. 554.)

McFARLAND, J.—Defendants are state harbor commissioners. Plaintiffs are owners (being seised of a term of years therein) of those certain premises in the city of San Francisco known generally as block 12 of South Beach water-lot property, lying between Channel Street on the southerly side, Berry Street on the northerly side, Third Street on the easterly side, and Fourth Street on the westerly side. Channel Street is an arm of the bay of San Francisco running up from the open bay through a portion of the southern part of the city past and beyond the said block 12. It is covered by the waters of the bay; the tide ebbs and flows in it; it is navigable, and is used and navigated by vessels engaged in commerce; it has been dedicated to public use for purposes of navigation and commerce; and it is claimed by defendants to be of the width of two hundred feet up to a point beyond the said land of plaintiffs. By an act of the legislature approved March 26, 1868 (Stats. 1867–68, p. 355), it was declared that a canal 140 feet wide located in the middle of said Channel Street should forever remain open for purposes of drainage and navigation; and it is contended by defendants that there is thus left on each side of said 140-feet canal a strip thirty feet wide which is part of said Channel Street, and within their jurisdiction and

control as harbor commissioners. And upon what is claimed by defendants to be the thirty-foot strip next to plaintiffs' block 12 — on the northerly side of what is claimed to be Channel Street — defendants entered and were about to drive piles upon and along a part of the same and to erect a wharf thereon, when plaintiffs commenced this action to enjoin them from so doing. Plaintiffs claim that this strip is a part of their said block 12. The court below found against plaintiffs, and entered judgment for defendants; and from the judgment and an order denying a new trial, plaintiffs appeal.

The land in controversy, together with large quantities of other land in that vicinity, originally belonged to the state of California, and were granted by the state to the city of San Francisco for the term of ninety-nine years, by an act of the legislature passed March 26, 1851, and generally known as the water-lot act. It is admitted and found that the title of the city under said act to said block 12 passed to plaintiffs on December 30, 1852, through a deed to them of that date executed by one Lewis Peck, to whom the title had regularly come through sufficient conveyances. The court found that more than twenty years ago plaintiffs erected, and still maintain, upon said block, *including said strip thirty feet in width,* wharves and other structures for the loading and unloading of ships and vessels and the storage of merchandise, and "have continuously, for more than twenty years next before the commencement of this action, used and occupied the whole of said lot or parcel of land, *including said strip thirty feet wide,* for the purposes aforesaid, and still continue to so use and occupy the same."

But the court found that while plaintiffs' land, block 12, is 825 feet long from Third to Fourth Street,—the length claimed by plaintiffs,—it is only 245 feet wide from Berry to Channel Street, instead of 275 feet, as claimed by plaintiffs; and that as 245 feet southerly from Berry Street would not include any of the thirty-foot

strip, as claimed by defendants, therefore plaintiffs do not own any of the land upon which defendants propose to operate. The main issue of fact, therefore, was as to the width of plaintiffs' land,—whether 275 feet wide, as claimed by them, or only 245 feet, or less.

Plaintiffs contend, first, that this issue should have been found in their favor upon the evidence introduced, and upon the application of the true rules of construction to their title deeds; and secondly, that if the finding of the court on that point could be held as supported by the evidence at all, it could be so held only by taking it as based on evidence erroneously received and considered, against the objections and exceptions of plaintiffs.

If we construe plaintiffs' deeds according to courses, distances, and quantities therein expressed, then the amount of land and its length and width are exactly as plaintiffs claim. The description in the deed to plaintiffs, dated December 30, 1852 (and the prior deeds were substantially the same), is as follows:—

"All those three certain one-hundred-vara water lots situated in the city of San Francisco, and being subdivisions number one (No. 1), number two (No. 2), and number three (No. 3) of the block known on the official map of said city as number twelve (No. 12), South Beach water lots, bounded as follows, to wit:—

"Beginning at the point forming the southwesterly corner of Third and Berry streets, and running thence southwesterly on the line of Berry Street three hundred varas to Fourth Street, thence southeasterly along the line of Fourth Street one hundred varas, thence northeasterly at right angles along Channel Street three hundred varas, and thence northwesterly along the line of Third Street one hundred varas to the place of beginning." Three one-hundred-vara lots would include a piece of land 825 feet long (the length claimed by plaintiffs and found by the court) and 275 feet wide (the width *claimed* by plaintiffs). Moreover, the further descriptions of

three hundred varas between Third and Fourth streets and one hundred varas along the lines of Third and Fourth streets make the block of the exact length and width claimed by plaintiffs. It is argued, however, by respondents that in cases of disputed boundaries, courses and distances and quantities must give way to monuments. That is undoubtedly the general rule. But before the rule can be applied, there must not only be monuments which will stand still, and not float or fly, but the place where the alleged monuments were at the time the conveyance was made must be satisfactorily located. The monument which is claimed to be controlling in this case is the northerly line of Channel Street; but where that line was, or is, constitutes the unknown quantity of the problem. In 1852, when plaintiffs got their deed, the land in controversy and the place where Channel Street is claimed to be, and all the country round about there, was a wide waste of waters. There was not only no designation of Channel Street on the surface, but it can hardly be said to have had any *definite* dimensions or boundaries, even in mental contemplation. Of course if there had been proper evidence sufficient to locate the line of that street as the court must have located it, we would not be prepared to say that such line should not control the other descriptive parts of the deeds. But as to that point we think the court erroneously admitted evidence upon which it must have based its findings.

Plaintiffs received their deed and acquired their title, as before stated, in December, 1852. At that time there was a map of the city certified and indorsed by the mayor and city surveyor, in accordance with the requirement of section 5 of said act of March 26, 1851, by which the land in question was granted by the state to the city. This was called the Eddy or Red Line map; and being thus recognized by the state and city, and in existence at and before the time when the deed

was made, and being referred to in the deed itself, it was properly introduced in evidence, plaintiffs contending that it shows their land to be as they claim. But the court allowed the defendants, over the objections of plaintiffs, to introduce a number of maps of the city of San Francisco and parts of it, made long after plaintiffs' title had accrued, as follows: A map called City Engineer's map, of the date of January 30, 1866; a map of the city-front and water-lot property, made under the directions of the state harbor commissioners in 1864; a map made under directions of the board of tide-land commissioners in 1869; a map of the city known as the Humphrey's map, made in 1870; a map called the Turner map, made in 1869; and also other maps, surveys, and *data* in the surveyor's office, all made long after 1852. On these maps and surveys—at least, on most of them—the said block 12 appeared as of less width than 275 feet, some of them showing a width of only 240 feet, and nearly all the testimony of the witnesses of defendants tending to show the smaller width of the block was based on said maps and surveys. It is apparent, therefore, that the evidence was material, and that the court must have given great weight to it. Indeed, without the maps and the testimony founded on them, there would not be sufficient evidence to support the finding. And we are satisfied that these maps and surveys were erroneously admitted in evidence. Counsel for respondent argued that they were admissible as acts and declarations of parties. Of what parties? Certainly not of plaintiffs or of persons who could bind them. They were declarations either of third parties entirely unconnected with the issues involved, or of parties in their own interest who were hostile to plaintiffs; and in either event they were clearly inadmissible. If a man has really acquired title to land, he cannot afterward be *mapped* out of it by other persons.

For the foregoing reasons, the judgment must be re-

versed; but as there may be another trial, there are one or two other things which need brief mention.

1. Appellants contend that by said act of March 26, 1851, the state conveyed all the premises in question here, including the whole of Channel Street, to the city; and that therefore neither the state nor the state harbor commissioners have any jurisdiction or control over them. But it was held by this court in *People* v. *Williams*, 64 Cal. 498, that by said act the state did *not* surrender control over the navigable waters of the bay, of which Channel Street is a part. We do not desire to disturb the ruling in that case, and therefore this contention of appellants must be determined against them. (It may be remarked that the point as above stated was about all that *was* determined in *People* v. *Williams*.)

2. Respondents contend that an injunction would not lie in this case under any alleged state of facts, because the code provides that "an injunction cannot be granted to prevent the execution of a public statute by officers of the law for the public benefit." (Civ. Code, sec. 3423.) But there is no public statute, or other law, which authorized defendants to take plaintiffs' land, at least without proceedings under the power of eminent domain.

We perceive in the record no other matter of importance necessary to be noticed.

Judgment and order appealed from reversed, and a new trial ordered.

THORNTON, J., WORKS, J., PATERSON, J., SHARPSTEIN, J., and BEATTY, C. J., concurred.

Rehearing denied.