[No. 15269. In Bank.—January 3, 1894.]

WARREN R. PAYNE ET AL., RESPONDENTS, v. WILL-
IAM D. ENGLISH ET AL., APPELLANTS.

DEED—BOUNDARY—SUBSEQUENT LOCATION OF STREET.—Where a deed described the premises granted, as being on the line of a street which was practically located after the deed was made, such location may be looked to for the purpose of determining the location of the land granted, and when such street was established, built upon, accepted, recognized, and used by the city authorities and the public, it became a street of the city and presumably the street referred to in the deed.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial.

The facts are stated in the opinion of the court upon the former appeal (79 Cal. 540) and in the opinion rendered upon the present appeal.

*F. S. Stratton,* and *T. C. Coogan,* for Appellants.

*Cope, Boyd, Fifield & Hoburg,* for Respondents.

BELCHER, C.—This is the second appeal in this case. On the first appeal the judgment, which was in favor of

the defendants, was reversed and a new trial ordered. (79 Cal. 540.) The second trial resulted in a judgment for the plaintiffs, and the present appeal is from an order denying the defendants' motion for a new trial.

The facts of the case are very fully stated in the opinion rendered on the former appeal, and need not be repeated here at length.

The plaintiffs allege that they are, and for more than thirty years have been, the owners of that certain lot or parcel of land in the city and county of San Francisco, bounded by Berry, Channel, Third, and Fourth streets, and having a width between the two first-named streets of 275 feet, and a length between the two last named of 825 feet.

The defendants in their answer admit that the plaintiffs are the owners of the lot or parcel of land described in their complaint, except a strip of the uniform width of 30 feet, extending along the southeasterly side thereof; and they allege that this strip of land is, and for more than 30 years has been, a portion of Channel street, and that plaintiffs have not now and never had any right, title or interest therein or thereto.

The court found that the original plaintiffs were, at the commencement of the action, and for more than 30 years prior thereto they and those under whom they claim had been, the owners of that certain lot or parcel of land particularly described in the complaint; "that no portion of said lot or parcel of land is, or ever was, a part of Channel street"; and "that the southerly portion of said lot or parcel of land, mentioned and referred to in the answer of defendants, as a strip of the uniform width of 30 feet, and extending from Third street to Fourth street, being a distance of 825 feet, is not and never was a portion of Channel street."

Whether this finding as to the 30 foot strip was justified or not is the principal question presented for decision.

The deed, under which the plaintiffs claimed title, was executed in 1852, and described the premises con-

veyed as "beginning at the point forming the south-westerly corner of Third and Berry streets, and running thence southwesterly on the line of Berry street 300 varas to Fourth street; thence southeasterly along the line of Fourth street 100 varas; thence northeasterly at right angles along Channel street 300 varas, and thence northwesterly along the line of Third street 100 varas to the place of beginning."

The distances named in the deed are equal to 825 and 275 feet, and the premises described are therefore of the dimensions claimed by plaintiffs.

In 1852 and thereafter, until 1865 or 1866, the land conveyed by the deed and the streets surrounding the same were covered by the navigable waters of the bay of San Francisco. Channel street was then and still is an arm of the bay extending up several blocks past and beyond the block in question. And in 1868 an act was passed by the legislature which declared that a canal 140 feet wide, located in the middle of Channel street, should forever remain open for the purposes of drainage and navigation.

When the deed was made there was an official map of the city, called the "Eddy" or "Red-line" map, on which the land conveyed was represented as block No. 12 of South Beach water lots, but there were then and could be no marks or monuments upon the ground designating the corners of the block or the lines of the adjacent streets.

In 1865 piles were driven and planked over along the southerly side of Berry street, as now established between Third and Fourth streets, so as to form a driveway thereon, and within a year or two thereafter the street was filled in to about its present grade and made 82½ feet wide. In 1865 or 1866 the owners of block 12, or their tenants, began to erect buildings along the northerly line of their block, and at their request the city surveyor surveyed and marked out for them the southerly line of the street. They continued this building until 1867, when nearly the whole front of the block was built upon.

They also built several wharves leading back from the rear of their buildings to the north line of Channel street, as they locate it. In 1867 also the owners of the opposite block, on the northerly side of Berry street, began to build along the street, and they continued this work until nearly the whole front of the block was built upon. As thus established and built upon Berry street has remained ever since—now nearly or quite 25 years —a recognized thoroughfare of the city, which has been and is largely used by the public for the purposes of traffic over it.

At both trials it was claimed by defendants that the plaintiffs' block of land was only 240 feet wide, and on the first trial the court found, upon evidence which this court held inadmissible, that it was only 245 feet wide.

This claim is practically abandoned now, but it is insisted that "while plaintiffs' deed may properly be construed as calling for a tract of land 275 feet in width," still it is necessary for them to locate their grant upon the ground, which could not be done by measuring from the present practical location of Berry street.

The answer raises no issue as to the location of Berry street, and the record contains no evidence tending to show that it is not correctly located. On the contrary, the evidence on the part of defendants refers to the southerly line of the street as correctly fixing the northerly line of block 12. George F. Allardt, a civil engineer and surveyor of long experience, was called as a witness for defendants, and testified that in 1868 he was the chief surveyor of the board of tide land commissioners, and as such made a survey and map of the block in question as well as other blocks on Mission bay, and the streets surrounding them. He was asked: "Where did you get the data from which you located the northerly line of Channel street?"

A. "From the maps on file in the city and county surveyor's office, and the maps on file in the secretary of state's office. The southerly line of Berry street being visible on the ground by reason of improvements,

in order to find the northerly line of Channel street, which is the southerly line of block 12, it was only necessary to measure the distance so obtained in the data referred to. It was only necessary to measure the 240 feet which I found on these maps."

Q. "You stated that the southerly line of Berry street was a well-defined line by buildings being erected upon it?"

A. "Yes, sir."

Q. "And you assumed that the northerly line of Channel street was two hundred and forty feet from that point, didn't you?" A. "I so measured it on the ground. I assumed it and measured it on the ground I located."

Now if, as defendants contend, Berry street as now located cannot be looked to for the purpose of determining the location of block 12, because it was practically located after the deed to plaintiffs was made, then it would seem to be impossible to mark out on the ground the northerly and southerly lines of the block, and the grant must therefore ever remain a float.

But we do not think this can be so. When Berry street was established and built upon, and was accepted, recognized and used by the city authorities and the public, it became a street of the city and presumably the street referred to in the deed. The following language used by this court in deciding the case of *Oreña* v. *City of Santa Barbara*, 91 Cal. 621, is applicable to the case in hand: "In determining the line of the street, measurements on that street would naturally be of more value than elsewhere, but if they, or the places where they were, cannot be located, it would be important to ascertain the boundaries of the street as actually opened and used; and if such location has been generally acquiesced in by the public, by lot-owners and the municipality, in the absence of more certain evidence, it will be conclusive." And again: "In order to build cities and towns there must be some finality as to the location of blocks and streets."

It must be held, therefore, that the court below was

fully justified in finding that the thirty-foot strip in controversy was not a part of Channel street.

Counsel for defendants next call attention to the late decision of the United States supreme court in the Chicago water-front case (146 U. S. 387), and urge that under the law as declared in that case, " plaintiffs cannot assert title and claim as against the state where such assertion will actually interfere with the paramount interests of commerce."

We are unable to see how that case can control or affect the decision in this. As has been stated, the defendants admit the plaintiffs' ownership of block 12, and only deny that the strip in controversy is a part of that block. This question having been decided against their contention, they, as members of the board of state harbor commissioners, are by the statute given no control over the strip. (Political Code, sec. 2524.)

We advise that the order appealed from be affirmed.

SEARLS, C., and TEMPLE, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed.

MCFARLAND, J., GAROUTTE, J., HARRISON, J., DE-HAVEN, J.