[Civ. No. 2651.    Second Appellate District.—October 7, 1918.]

SANTA FE LAND IMPROVEMENT COMPANY (a Corporation), Appellant, v. CITY OF SAN DIEGO (a Municipal Corporation), Respondent.

Municipal Corporations—Harbor Commissioners—San Diego Bay—Wharf Privilege—Grant by Commissioners—Confirmation by City.—Under section 2606 of the Political Code, which, in 1905, gave the harbor commissioners of the bay of San Diego authority to grant permits to private persons to build and maintain wharves in the bay of San Diego, but directed that all such permits should contain a reservation of a right in the commissioners to terminate the franchise at any time and to purchase any wharf, etc., at a price to be fixed by arbitration as provided in that section, and further provided that in fixing such value the franchise or privilege should not be considered

as of any value, and that "no franchise granted within or bordering upon the corporate limits of any city shall be valid until the same shall be ratified and confirmed by an ordinance of such city," the city of San Diego could ratify and confirm or reject a grant by the harbor commissioners of a permit or franchise for a wharf within the corporate limits of that city, but could not ratify *upon condition,* since the law vested in the harbor commissioners the right to prescribe the conditions under which the wharf privilege should be enjoyed.

Id.—Confirmation Ordinance — Invalid Conditions.—Conditions attached to an ordinance of the city confirming the grant by the harbor commissioners of a wharf privilege, such as limiting the time within which the wharf should be built, and providing that the city should have the right to vacate the confirmation at its pleasure, were of no effect, and the confirmation must be deemed absolute and stripped of all conditions, the latter being void for want of jurisdiction.

Id.—Act of 1911—Transfer and Delegation of Power to City.—The act of May 1, 1911, (Stats. 1911, p. 1357), gave the city of San Diego complete charge of the tide and submerged land, at least to the pierhead lines, to the uttermost limit to which wharves could be legally constructed in the harbor, under federal permission, and the delegation by the state to the city, by that act, of its power over the tide and submerged land in the bay of San Diego was as complete as it was possible for the state to make it.

Id.—Wharf Franchise—Rights of City in Conditions.—As a necessary incident of the grant or transfer to the city of San Diego of the powers of the state by such act of May 1, 1911, there was transferred to the municipality, as substituted for the board of harbor commissioners, the right to take advantage of any condition reserved for the benefit of the state in a wharf franchise theretofore granted by the harbor commissioners and the city, therefore, had the right to terminate such a wharf franchise and take possession of the ground upon payment of the value of the wharf only.

Id.—Termination of Wharf Franchise — Compensation — Right of Possession.—Upon the determination of the proper authority that such a wharf franchise shall terminate, the right granted ends, and there is left only the matter of adjustment of compensation between the franchise holder and the representative of the state, and when this compensation is fixed, the state is entitled to the possession of the ground and wharf.

Id.—Action by Franchise-holder.—Where, in an action by the owner of such a wharf privilege against the city to restrain it from preventing the plaintiff's workmen from raising the wharf structure above the level of a fill, which the city, in the course of a public improvement was constructing, by filling in the shallow tide waters

of the bay above and below portions of the wharf structure, it appeared that the city had in effect declared the franchise terminated at a date long prior to the acts complained of, but had not proceeded to have its arbitrators appointed in order to fix the compensation which the plaintiff was entitled to have fixed before possession was relinquished of the wharf franchise, then at the time of the commission of the acts complained of, the plaintiff still held the right to the possession of the wharf in the place where it was located.

Id.—Injunction not Proper Remedy.—In such case, however, in view of the provisions of section 526 of the Code of Civil Procedure, and section 3422 of the Civil Code, the conditions were not such as to warrant the court in restraining interference with the possession of the plaintiff, and a judgment denying the injunction prayed for was proper.

APPEAL from a judgment of the Superior Court of the County of San Diego. C. N. Andrews, Judge.

The facts are stated in the opinion of the court.

E. W. Camp, U. T. Clotfelter, M. W. Reed, and Robert Brennan, for Appellant.

T. B. Cosgrove, City Attorney, for Respondent.

JAMES, J.—Appeal from a judgment denying to plaintiff injunctive relief.

In August of 1905, the control of the bay of San Diego was vested in a board of state harbor commissioners especially appointed for the bay by that name. The authority of such commissioners was as defined in certain sections of the Political Code. The right was given to such commissioners to grant permits to private persons to build and maintain wharves. Pursuant to such authority, on the first day of August, 1905, the harbor commissioners passed a resolution granting to William Jorres and G. W. Jorres the right for a period of twenty years to maintain "a wharf already constructed in the bay of San Diego," at a place designated and particularly described in the resolution granting the permit. The resolution provided for an annual rental to be paid for the privilege, and also contained a condition satisfying the terms of the statute, which provides that in the case of a wharf permit or franchise grant the commissioners shall reserve the right to terminate the same and purchase the wharf,

the provision in terms being as follows: ''That if at any time the said commissioners shall desire to terminate any franchise and to purchase any wharf, pier, marine ways, drydock or shipyard, and the purchase price thereof cannot be agreed upon, then the owner of said franchise shall select two disinterested persons, and the said commissioners two disinterested persons, who shall ascertain and fix the value thereof, and if three of said four persons cannot agree, then they shall appoint a fifth competent disinterested person, and any three of said five persons may fix the value thereof, and upon the payment or tender thereof by the commissioners, they shall be entitled to the possession thereof, and the title thereto shall vest in the state of California, and all franchises to build, construct or maintain any wharf, pier, marine ways, drydock or shipyard, shall contain this provision therein; provided, that in fixing such value the franchise or privilege shall not be considered as of any value.'' (Pol. Code, sec. 2606.)   The wharf permit or franchise, in the course of time, passed by assignment into the hands of the plaintiff, which held the same at the time of the acts complained of and thereafter.   The franchise, as granted, described the wharf site as extending from the shore of the bay past the government bulkhead line and to the official pierhead line.   However, while the resolution granting the franchise recited that the wharf was already constructed, it appears that the wharf existed only upon a portion of the site, and that during the years following the wharf became in disrepair and the outer end thereof continued to decay and fall into the bay until, at the time of the commission of the acts complained of and the commencement of this action, the structure extended from the shore for only a distance of about 625 feet, and lay wholly between the shore line and the government bulkhead line. The city of San Diego, as a work of public improvement, had proceeded to fill in the shallow water of the bay, up to within 75 feet of the bulkhead line, and proposed also to extend one of the city streets through, over, and across this fill, to the official bulkhead line, which extension would include all of the existing wharf structure of the plaintiff, except two very small portions which existed by way of lateral projections.   The work of filling had progressed up to a point where the earth was being filled both under and over a portion of the wharf structure.   Thereupon the plain-

tiff proceeded to have its workmen commence the raising of the wharf structure above the level of the fill. The city by its employees interfered and prevented this latter work from being done; whereupon this suit was brought for an injunction to restrain and prevent such interference. More particular reference will be made hereinafter to the record of official action taken by the city of San Diego and to the time thereof.

The lands upon and over which the fill was being made were tide-lands, the right to the use of which the city claimed by virtue of an act of the legislature approved May 1, 1911. (Stats. 1911, p. 1357.) The city's position also has been and is that by the act mentioned all of the authority theretofore vested in the board of harbor commissioners for the bay of San Diego as an agency of the state, was transferred in its entirety to the city. As a result of the last assumption the city maintains that the condition, which under the statute became a term of the franchise grant, to wit, the condition giving the commissioners the option to terminate the privilege by paying for the wharf, has descended to it and that its action finds full justification in the facts as disclosed by the record. Going behind all of this, the city claims also that when it confirmed the grant of the franchise it did so by ordinance and upon certain conditions which the franchise-holder never fulfilled. To understand this latter position, something must be said as to the terms of the statute, in addition to that recited. Section 2606 of the Political Code contains, among other things, this provision: "Provided, no franchise granted within or bordering upon the corporate limits of any city shall be valid until the same shall be ratified and confirmed by an ordinance of such city." The franchise granted to the assignors of plaintiff was confirmed by the city by ordinance, certain conditions being added, however, such as limiting the time within which the wharf structure should be built and providing that the city should have the right to vacate the confirmation at its pleasure. We do not agree with respondent that the conditions attached to the ordinance of confirmation were of effect. The granting power was in the board of harbor commissioners; the city could ratify and confirm or reject; its power was not to ratify upon condition, for the law vested in the harbor commissioners the right to prescribe the conditions under which the wharf privilege should be enjoyed. The city did not elect to reject the franchise, but confirmed it,

and having done that, we think its confirmation must be
deemed to have been absolute and stripped of all conditions;
that the latter were void for want of jurisdiction.    This posi-
tion is sustained in its principle by California cases which
define the extent of the power of the state over tide and har-
bor lands.    (See *People* v. *California Fish Co.,* 166 Cal. 576,
[138 Pac. 79] ; *People* v. *Williams,* 64 Cal. 498, [2 Pac. 393] ;
*Payne* v. *English,* 79 Cal. 540, [21 Pac. 952].)    This power
was one inherent in the state and subject to control and defini-
tion by general statute, and was not a municipal affair.    (See,
also, *Galveston & W. Ry. Co.* v. *City of Galveston,* 90 Tex.,
398, [36 L. R. A. 33, 39 S. W. 96].)    A similar condition was
presented in that case, where the court said: ''In order to sus-
tain the claim that the city of Galveston had the right to
couple with its consent for the railroad company to use its
streets any conditions or terms that it might deem proper, we
must invest that municipal corporation with such legislative
authority over the subject as would make its action the source
from which the railroad company derives its right to build on
the streets, or we must conclude that the city had as full
power to contract as a private person has, and that the ordi-
nance in question constituted a contract between it and the
railroad company.''    The source of the power here involved
was the state, to which, under the constitution, has been re-
served the right to hold and control those lands and waters
for purposes of navigation, fishery, etc.    (See California cases
cited.)    The cases cited recognize the right in the state
to delegate its power over the lands to other agencies, such
delegation being consistent all the while with the paramount
rights impressed upon the same for the public benefit.    We
think, then, that the inquiry must be to determine how far the
state has delegated to the city its power over the tide and sub-
merged lands in the bay of San Diego.    And we find upon
examination of the act of the legislature no apparent reason
for concluding that the power and control over the lands,
harbor, and wharf facilities is not as complete as it was
possible for the state to make it.    The act in its preamble
recites as follows: ''Whereas, the state has not the general
power of alienation of such lands but may, when the interests
of commerce, navigation and fishing require it, convey to
municipalities limited and defined areas of such lands with
the power to govern, control, improve and develop the same in

38 Cal. App.—25

the interests of all the inhabitants of the state; and whereas, the conveyance to the city of San Diego of the lands hereinafter described, together with the right to govern, control, improve and develop the same will result in great advantage and benefit to all the inhabitants of the state, it is provided:'' The act then proceeds to describe all lands between the line of high tide and the pierhead line in the bay, etc.—provides that the city shall have the right to make improvements, betterments, and structures useful and needful for the development of commerce, navigation, and fishing, including wharves, docks, piers, etc. The right is given to take tolls and to lease wharves constructed by the city. In general, as we read it, the act purports to give to the city complete charge of the tide and submerged lands, at least to the pierhead lines, which would be the outermost limit to which wharves could be legally constructed in the harbor under federal permission. The act did not specifically give the city authority to grant franchises, although at a later date this subject was covered by amendment. (Stats. 1915, p. 1323.) We think that as a necessary incident of the grant or transfer to the city, there was transferred the right to the municipality, as substituted for the board of harbor commissioners, to take advantage of any condition reserved in the franchise for the benefit of the state. Assuming the correctness of this position, it at once appears that the city had the right to terminate the wharf franchise of the plaintiff and take possession of the ground upon payment of the value of the wharf only. As we construe the statute and the terms of the franchise granted in accordance therewith, upon the determination being made by the proper authority that the franchise should terminate, the right granted becomes at an end, and there is left only the matter of adjustment of compensation between the franchise holder and the representative of the state. This adjustment is provided to be made by arbitrators, and it is provided that when the award is made by such arbitrators, if not accepted upon tender of the compensation fixed, the state shall be entitled to the possession of the ground and wharf.

We now are confronted with two remaining questions: 1. Did the city by appropriate action terminate the franchise and do all that was required of it in the way of awarding compensation to the wharf owner? 2. Assuming that such action was not taken and that the city was proceeding to take

possession of the wharf and interfere with the ownership of
the plaintiff therein, was the plaintiff entitled to an injunc-
tion, or should it be left to its action at law for damages
which, it must be conceded, could be easily and reasonably
ascertained?   We find, first, that this action was commenced
on January 28, 1915, by the filing of the complaint.   Prior
thereto, and in the year 1913, a resolution was adopted by the
city council of San Diego declaring that it was the desire of
said council to purchase the wharf upon the ground covered
by the Jorres franchise, and appointing an agent to ascertain
and negotiate the price, the same to be agreed upon.   On
January 26, 1915, two days before the filing of the complaint
in this action, an ordinance was adopted forfeiting the fran-
chise rights granted to the assignors of plaintiff, and another
ordinance was adopted on the same day attempting to repeal
the original ordinance confirming the franchise grant.   On
the day of the filing of the complaint another ordinance was
adopted to open and extend F Street in the city of San Diego
over and across the wharf of the plaintiff; on February 3,
1915, a resolution was adopted terminating the wharf fran-
chise and providing for the purchase of the wharf and ap-
pointing two appraisers; on February 8, 1915, another resolu-
tion was adopted declaring the intention of the council to be
bound by the decision of arbitrators, and demanding that the
plaintiff appoint arbitrators on its behalf.   By the answer in
the case it was shown that notice was given to the plaintiff of
the appointment of the arbitrators on behalf of the city, and
the various acts taken by the municipality as noted above were
referred to.   It does not appear that any further steps were
taken under the resolution of August 13, 1913, by the city.
It may well be said, then, we think, that while the city had
declared in effect the franchise to be terminated at a date long
prior to the commission of the acts complained of, it had not
proceeded to have its arbitrators appointed in order to fix the
compensation which the plaintiff was entitled to have fixed
before possession was relinquished of the wharf structure.
This being true, then at the time of the commission of the acts
complained of the plaintiff still held the right to the posses-
sion of the wharf in the place where it was located, and we
would be inclined to hold that the offer of the city to appoint
arbitrators, made after the commencement of the action,
would not debar the plaintiff from its right to relief if, under

the facts, an injunction appeared to be the proper remedy. We are, therefore, brought to the second proposition before noted, that being whether, where it appears that the wharf franchise has been terminated, leaving only the matter of the ascertainment of the value of the wharf structure to be made, the conditions were such as to warrant the court in restraining interference with the possession of the plaintiff. We think this must be answered in the negative, in consonance with the well-known equitable rule which finds expression in section 526 of the Code of Civil Procedure, and section 3422 of the Civil Code. The court by its findings determined fully all of the facts which we have made note of, including a finding as to the conditions imposed by the ordinance confirming the franchise grant on the part of the city. It may be that the court gave greater weight to those conditions than to other facts found (if so, erroneously, under our view), but it does remain true that there are facts disclosed by the findings which, in view of what has last been stated, afford sufficient support for the judgment denying an injunction.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.