[In Bank. — January 29, 1884.]

# THE PEOPLE, APPELLANT, v. H. F. WILLIAMS, RESPONDENT.

NAVIGABLE WATERS—STATE CONTROL.—Subject to such restrictions as Congress may impose in the exercise of its power over commerce, the State has the right to control and regulate the use of navigable waters within its boundaries.

ID.—SUCH RIGHT NOT SURRENDERED TO THE CITY AND COUNTY OF SAN FRANCISCO IN RESPECT TO CHANNEL STREET.—The several acts of the legislature in relation to water property in San Francisco, and the establishment of Channel Street as a public highway, cited and discussed by the court, and *held* not to be a surrender of such right of control on the part of the State to the city and county of San Francisco as to a portion of Channel Street covered by the navigable waters of the bay.

ID.—DEDICATION OF CHANNEL STREET.—The Act of April 1, 1882, in regard to the dedication of a portion of Channel Street to the use of the city as a canal for drainage and navigation, and requiring certain improvements to be made and maintained by the city, did not operate *per se* as a dedication. It was merely an offer to dedicate upon the making of the improvements, and as the city did not accept the offer and make the improvements, the dedication was never completed.

ID.—WHARF—BOARD OF STATE HARBOR COMMISSIONERS.—The action was brought to determine whether a wharf erected on Channel Street, and being the property of the State, was subject to the control of the board of State harbor commissioners, or of the city and county of San Francisco. *Held*, that the control of the wharf was vested in the board and not in the city.

APPEAL from a judgment of the late District Court of the Nineteenth Judicial District.

The facts are stated in the opinion.

*J. B. Lamar*, and *T. C. Coogan*, for Appellant.

*Mich. Mullany*, for Respondent.

McKEE, J.—Channel Street, between Fourth and Fifth Streets, in the city and county of San Francisco, is two hundred feet wide, covered by the waters of the bay of San Francisco, and navigable by vessels engaged in commerce. On the north side of this portion of the street the defendant, in the

year 1873, constructed a wharf, which he afterwards, on September 12, 1876, sold and conveyed to the plaintiff, by the following description: "All that wharf structure in the city and county of San Francisco situate on the north side of Channel Street, between Fourth and Fifth Streets, adjacent to and in front of Block No. 17, as known on the official map of said city and county of San Francisco." Notwithstanding this transfer, the defendant continued to dock his vessels within the street and discharge their cargoes at the wharf, for which the board of harbor commissioners demanded of him dockage, wharfage, and tolls from November 10, 1876, until June 10, 1877; but he refused to pay upon the ground that the wharf was not within the jurisdiction of the board, and that is the question.

There is no doubt of the right of the State to control and regulate the public use of the navigable waters within its boundaries, subject only to restraints upon the right arising out of the power of Congress over commerce. But it is claimed for the defendant that the State has, by legislation, surrendered its right over the water highway in question to the city and county of San Francisco.

The first legislation upon the subject is to be found in the statute passed March 26, 1851. By that statute the State granted to the city of San Francisco the tide-covered lands known as the beach and water lots, and established a permanent water front for the city. (Stats. 1851, pp. 306, 307.)

The mere establishment of a harbor line does not deprive the State of the right to control and regulate the navigable waters within the line. (*Eldridge* v. *Cowell*, 4 Cal. 80; *Guy* v. *Hermance*, 5 Cal. 73.) Nor did the grant of the beach and water lots, although it vested the property in them in the city (*Holliday* v. *Frisbie*, 15 Cal. 630), divest the State of its sovereign rights over the navigable highways on which the lots were bounded. Nor was it intended to have that effect, because section 6 of the statute declared: "Nothing in this act shall be construed as a surrender by the State of its right to regulate the construction of wharves or other improvements, so that they shall not interfere with the shipping and commercial interests of the bay and harbor of San Francisco."

All the streets of the city within the harbor line as established by that act, as they were laid down on the map called the official map of the city, and all the streets mentioned and referred to in the act, were afterwards confirmed, established, and dedicated to the public use as streets. (§ 7, Stats. 1858, p. 324.) Channel Street was one of those streets. It was therefore a public street of the city, dedicated to public use to its full extent, and subject, in that portion of it covered by the navigable waters of the bay of San Francisco, to the control and regulation of the State.

In 1863 the State, in the exercise of its right, established the board of State harbor commissioners to take possession of and hold all the portion of the bay of San Francisco and its appurtenances to the extent of six hundred feet from the harbor line, and to collect tolls, dockage, rents, and wharfage thereof for the purposes of commerce. (§§ 1, 2, 3, 4, Stats. 1863, p. 406 ; and Stats. 1863–64, p. 138.) On March 20, 1868, the State also dedicated that portion of the middle of Channel Street lying east of and between the easterly line of Harrison Street and the water front, to be an open channel, sixty feet wide from Harrison to Seventh Street, and one hundred and forty feet wide from Seventh Street to the water front; and authorized the city to extend streets across it by arched bridges or drawbridges, without the right of demanding or collecting tolls or wharfage thereon. (§§ 1, 2, Stats. 1868, p. 355.)

Four days afterwards, viz., March 30, 1868, the State established a board of tide land commissioners, with authority to take possession of the salt marsh and tide lands, situate in the city and county of San Francisco, to "survey the same to a point not beyond twenty-four feet water at the lowest stage of the tide, to establish the water line front of the city south of the terminus of Second Street, as established by the Act of 1851, and to lay off the space within this water line into lots and blocks in accordance with the official map and survey of the city, reserving so much thereof for streets, docks, piers, ship channels, drains, or other use necessary for the public convenience and the purposes of commerce as in their judgment will be required, also thirty acres exclusive of streets, basins, public squares, and docks lying southerly from Channel Street, and

outside of the line known as the red line water front of Mission Bay, subject to the rights of the city and county to establish and regulate streets, alleys, docks, wharves and basins, culverts, and sewers, and the laying down of gas and water pipes, and to such jurisdiction and control of the city and county over said street," etc. The State, however, did not surrender its right to control and regulate the navigable waters within the space inside of the water front, for it was by the act provided that "nothing in this act shall be construed to interfere with the collection of dockage and wharfage by the State, nor with the right of the State to construct, adjoining the property granted, such wharves and docks as may be from time to time provided." (§§ 1, 4, 5, Stats. 1868, pp. 716–718.)

But in March, 1872, the State vacated all the streets, alleys, and market places within the exterior boundaries of the marsh and tide lands as surveyed by the tide land commissioners, and granted the lands covered by them to the city and county of San Francisco, with full power to regulate, manage, control, and donate or dispose of the same by ordinance for railroad and other commercial purposes (§ 1, arts. lxxi. lxxii. p. 722); and on April 1, 1872, that portion of Channel Street, delineated as a canal on the official map of the city, lying east of the westerly line of Florida Street, and between the west line of Florida Street and the northeast line of Seventh Street, and so much of the channel of Mission Creek as lies south of the south line of Channel Street were declared and dedicated·to be an open canal, for the purpose of drainage and navigation, across which the board of supervisors of the city and county were empowered "to extend the streets abutting upon Channel Street and the said canal upon draw-bridges, which would not obstruct the navigation of the canal; to keep the canal dredged to such a depth that the water therein will be two feet deep at the lowest tide, and to construct a bulkhead upon and along both sides of the canal, and for the purpose to condemn private property lying on either side of Channel Street or the canal." (§§ 1, 2, 3, 4, Stats. 1871–72, p. 926.)

Upon this last statute the defendant makes his contention that Channel Street and its appurtenances were placed by the State under the jurisdiction of the city and county of San

Francisco, and that the State retained no jurisdiction over it.

Conceding that the State had the right to dedicate to the city a portion of the navigable waters of the harbor for the purpose of deepening, improving, and preserving the same, and for the regulation of vessels and wharves therein, and to surrender its right to control and regulate them, the statute relied on did not, *per se,* operate as a dedication or a surrender. It contained a mere offer to dedicate a portion of Channel Street and a portion of Mission Creek as an open canal, if the city would deepen and improve it as the legislature prescribed. But it was for the city to accept the offer and complete the improvements. If it did not, the dedication was not complete. The passage of an ordinance setting apart and dedicating a portion of the water front in a harbor for public use as a free public dock for ships is, said the late Supreme Court, a mere offer to dedicate, and the dedication is not complete, nor does the public acquire any right to the easement, until it has been accepted and used by the public in the manner intended. (*The City and County of San Francisco* v. *Calderwood,* 31 Cal. 586; *Same* v. *Canavan,* 42 Cal. 541.)

The city did not accept the offer made by the Statute of 1871–72, and the improvements were not made. Under these circumstances the State had the right to recall its offer in whole or in part, and to deal with the subject of it in the exercise of its sovereign powers. As part of the water highway of the State, the proposed canal and the streets connected with it were subject at any time to the exercise of those powers (*Polack* v. *Trustees etc.* 48 Cal. 491); and on March 27, 1874, the legislature of the State vacated a portion of Channel Street (§ 3, Stats. 1873–74, p. 711); and afterwards, on February 28, 1876, placed Channel Street, as far west as Fifth Street, under the jurisdiction of the board of State harbor commissioners. (§ 2524, Pol. Code; see also § 4, Stats. 1877–78, p. 263.)

As it is admitted that the wharf structure in controversy is located *in* Channel Street, and that, although it has not been built by, it belongs to the State, it results that the wharf is within the jurisdiction of the board of harbor commissioners, and that Channel Street, in which it is located, is subject to the control and regulation of the State.

The cases of *The People* v. *S. P. R. R.* No. 5607, and *The People* v. *Hooper*, No. 5608, are not in conflict with this conclusion. In those cases the wharves were the property of the respective defendants, built by them on their own soil, bounding on Channel Street, of which they were in possession under titles from the State. The cases did not involve the jurisdiction of the board within the water highway of Channel Street, and they are not analogous to the case in hand.

Judgment reversed and cause remanded.

MORRISON, C. J., MYRICK, J., SHARPSTEIN, J., and ROSS, J., concurred.