[Sac. No. 249.   Department One.—February 4, 1898.]

CITY OF SACRAMENTO, Appellant, v. T. J. CLUNIE, Respondent.

DEDICATION OF STREETS—ESTOPPEL OF MUNICIPAL CORPORATION—LONG DELAY—IMPROVEMENTS UPON LANDS CLAIMED AS STREETS—EJECTMENT.—It is only in exceptional cases that the doctrine of estoppel can be invoked against a municipal corporation; and it seems that a delay of forty years in bringing an action of ejectment to recover lands claimed to have been dedicated as public streets, during which delay large sums of money were expended in permanent improvements upon the lands by defendant and his grantors, does not estop the city from maintaining such action, if the streets were in fact dedicated to public use.

ID.—MAP OF BLOCKS AND STREETS—DEED INCLUSIVE OF STREETS—REVOCATION OF OFFER BEFORE ACCEPTANCE OF MAP—FINDING AGAINST DEDICATION—ABSENCE OF USER—IMPROVEMENTS—ACQUIESCENCE OF CITY.—Where a map drawn by a surveyor, showing the division of a tract of land into blocks and streets adjacent to a city, had been filed in the recorder's office, and subsequently thereto, but prior to any acceptance by the city of the map as an official map, deeds had passed from the owners whereby a portion of the land by metes and bounds, inclusive of a portion of the street, was granted to a private person, to whom the entire land included in his deed had been sold, such sale is evidence tending to show an intent to revoke any offer of dedication previously made by reason of the filing of the map, and the subsequent adoption of the map by the city as an official map is not sufficient evidence of dedication to reverse a finding of "no dedication," especially in view of the fact that there was never any public user of the streets, and that they were barred from travel for forty years, and

valuable and permanent improvements had been placed thereon, and that the city paid the defendant and his grantors, for the privilege of building levees thereon.

ID.—DEDICATION A QUESTION BETWEEN OWNERS AND PUBLIC—RIGHTS OF PURCHASERS FROM OWNERS NOT INVOLVED.—Dedication is a matter purely between the owners and the public, and the respective rights of the owners of lots and blocks who may have purchased from the parties · filing the map are not involved, further than that sales to them may be some evidence of an intention to dedicate the street to the public; but there is no such thing as a dedication between the owners and individuals, and the respective rights of the owners rest upon other and different principles of law.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. A. P. Catlin, Judge.

The facts are stated in the opinion of the court.

McKune & George, for Appellant.

A. J. Bruner, Andrew J. Clunie, and A. C. Freeman, for Respondent.

GAROUTTE, J.—This is an action of ejectment brought by the city of Sacramento to recover the possession of certain lands claimed to be public streets. The city's right to recover is based upon an alleged dedication by the owners to the public as streets. Defendant and his grantors have been in the adverse and exclusive possession thereof, claiming title thereto, for more than forty years, and have erected improvements thereon to the value of at least twenty thousand dollars. The trial court found as a fact that the lands described in the complaint were never dedicated to public use, and rendered judgment against the city. The sufficiency of the evidence to support this finding is the main matter at issue here, and, under the peculiar circumstances of the case, as developed by the foregoing facts, we will not disturb the finding of "no dedication" made by the trial court, unless the pressure of the evidence upon us forces such result.

It is insisted that an equitable estoppel has arisen in the path of plaintiff to bar a recovery. And *Los Angeles v. Cohn*, 101 Cal. 373, is relied upon to support the contention. While the conduct of the city in waiting forty years before bringing this

action is not at all commendable, especially in view of the fact that during this long interim large sums of money were expended upon the property in permanent improvements by the defendant and his grantors, still it is only in exceptional cases that the doctrine of equitable estoppel may be invoked against a municipality, and this case in its facts is not *Los Angeles v. Cohn, supra.* Again, we will not concern ourselves as to the true chain of title. While there appear to have been two distinct chains of title to these lands, yet both chains begin with Sutter in 1848 and terminate in this defendant. As we view the case, this difference of title becomes immaterial. There also appears to be a somewhat intangible claim upon the part of the plaintiff that all the lands of the city lying west of the east line of Front street, and extending to the river bank, form a part of that street. This position is inconsistent with the main position taken by the city, and certainly is not well founded.

Brannan, Bruce, and four others, claiming to own under deeds from Sutter a tract of land lying west of Front street and east of the Sacramento river, had the same laid out into blocks divided by streets. A map of these blocks and streets—the blocks numbered and the streets named—was made by Ruth, a surveyor, and filed in the recorder's office of Sacramento county May 3, 1851. The tract of land depicted upon this map has subsequently been known in the history of Sacramento city as Brannan's addition to the city. Subsequently, some of the blocks outlined upon this map were quitclaimed by five of these owners to Gillespie, also an original owner. The map as recorded was used for the purposes of description, and that transfer included the land here in dispute. But soon thereafter Gillespie conveyed to Haggin the land in dispute, with other lands by metes and bounds. The assessor of the city of Sacramento assessed the lands in the so-called Brannan's addition according to the description found upon the Ruth map. In the year 1854 the city adopted an official map wherein Brannan's addition according to the Ruth map is found. The adoption of this map as the official map of the city would undoubtedly have more weight as evidence of acceptance of the streets in Brannan's addition, if prior to that time Gillespie had not sold these lands, including the streets, to Haggin; for such sale is some evidence of intent

to revoke any offer of dedication previously made by reason of the filing of the Ruth map.

We have thus substantially outlined the evidence upon which plaintiff asks to set aside a finding of fact by the trial court to the effect that these lands were never dedicated to the public as streets. Even conceding this evidence sufficient to support a finding of dedication, still it is not sufficient to reverse a finding of "no dedication." In this case there never has been any acceptance upon the part of the city, by user, of the offer of dedication made by the parties filing the Ruth map. Forty years have gone by. During all this time these streets have been barred from travel, and valuable and permanent improvements placed thereon. Under such circumstances, in the absence of user, it would seem that a direct and explicit acceptance upon the part of the city of an offer of dedication might well be demanded by the trial court before dedication as a fact would be found. Certainly, a finding of acceptance of the offer to dedicate might well be refused from evidence of a general character simply justifying inferences looking toward such acceptance. Again, a potent fact tending to support the finding of the court of "no dedication" may be found in the evidence which discloses the city paying this defendant and his grantors large sums of money for the privilege of going upon these lands and erecting levees thereon. Such conduct is inconsistent with the present claims of the city, and tends to shed a bright light upon the previous status of these alleged streets, viewed from the city's standpoint.

In the consideration of the question here presented, it must be borne in mind that the litigation is alone between the owner and the city. The question is purely one of dedication. The respective rights of the owners of the blocks who may have purchased from the parties filing the map are not involved. Such sales may be some evidence of intention to dedicate, but nothing more. The respective rights of owners rest upon other and different principles of law. (See *Prescott v. Edwards*, 117 Cal. 298; 59 Am. St. Rep. 186.) It is there said: "Dedication is a matter purely between the owner and the public. There is no such thing as a dedication between the owner and individuals." Again, as bearing upon the effect of the deed from Gillespie to Haggin as evidence pointing to the revocation of any previous

offer of dedication, see *Schmitt v. San Francisco*, 100 Cal. 308. It is there said: "If, at the time Hayes conveyed to Hawley he had a right to revoke the dedication or offer to dedicate the land in controversy, there can be no doubt that conveyance had that effect. The description made no reference to the alleged street, but conveyed it as part of the tract sold. If the map and other facts show an offer to dedicate only, a conveyance or reservation must amount to a revocation, unless the purchaser had notice of some fact which would estop the grantor from revoking." There was no reason at the date of the Haggin deed why a revocation of any previous offer to dedicate, made by the filing of the Ruth map, could not have been had. We cite these matters of both law and evidence, not for the purpose of holding that any particular matter to which we have adverted justifies the affirmance of the judgment in this case, for such holding is not necessary. But we are entirely satisfied, taking all the evidence and the law bearing upon the evidence, that the finding of fact made by the trial court that these lands were never dedicated to public use should not be set aside.

For the foregoing reasons the judgment and order are affirmed.

Van Fleet, J., and Harrison, J., concurred.

Hearing in Bank denied.