[S. F. No. 7385.   In Bank.—February 18, 1918.]

THE PEOPLE ex rel. BOARD OF STATE HARBOR COMMISSIONERS, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

PLEADING—ANSWER—TRAVERSE BY AFFIRMATIVE CONTRARY ALLEGATION.—An allegation that a parcel of land is a portion of a public street according to a certain map is put in issue by an affirmative allegation in the answer that the said parcel constitutes part of a block of land as delineated on the map.

JUDICIAL NOTICE.—The court takes judicial notice of the map referred to in the act of 1851, known as the "red line" map, granting to San Francisco an estate for ninety-nine years in the lands delineated on the map, but it does not take judicial notice of the extent of the possessions of the various persons occupying lands within the boundaries of said map.

ID.—POSITION OF TIDE-LINES.—Assuming that all the lands delineated on said red line map were originally tide-lands, the court cannot take judicial notice that any particular block thereon is still under the ebb and flow of the tide.

NAVIGABLE WATERS—BURDEN OF PROOF.—If the state claims that any particular block shown upon the "red line" map is under navigable water, the burden of proof is upon it to show that fact.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Daniel A. Ryan, for Appellant.

Frank McGowan, for Respondent.

SHAW, J.—Three cases pending in the superior court between the parties hereto, numbered respectively in that court 13097, 13099, and 13555, were, by stipulation of the parties, tried together upon the same evidence. They each involve the same questions of law and fact, but differ in regard to the description of property involved. The complaints state causes of action for the recovery of possession of parcels of land alleged to be portions of Channel Street, in the city and county of San Francisco, and to be the property of the state of California. They are strips of land thirty feet wide, occupying spaces aggregating about five hundred feet, running east and west, between Fifth and Sixth Streets. The complaint alleges that Channel Street is an arm of the bay of San Francisco, and has a width of two hundred feet; that the tide waters of the bay regularly ebb and flow over and upon the same, and that said street is dedicated to public use for navigation and commerce as a part of the navigable waters of the state; that the state is and always has been seised in fee and entitled to the possession thereof, and that the relator is entitled to its possession and control as an agency of the state, and that the defendant is in possession of the said parcels, holding without right. The prayer was for the recovery of possession only.

The answer denies that Channel Street is an arm of San Francisco Bay, or that tide waters of the bay ebb and flow thereon, or that the state is the owner thereof. It also denies the dedication to public use, and denies that the state or any of its agents has the right to the possession or control thereof. It does not expressly deny the allegation that the lands described in the complaint are portions of Channel Street. It avers that the defendant has acquired title to said parcels by adverse possession, and is now the owner thereof. It further alleges that said parcels of land constitute parts of block 22, as delineated upon a map of the beach and water lots of the city of San Francisco, known as the "red line map," surveyed by William M. Eddy in 1851, which said lots and blocks were granted by the state of California to the city of San Francisco for the period of ninety-nine years, by the act of March 26, 1851 (Stats. 1851, p. (307) 311, G. & S. 764), and that by mesne conveyances from the city of San Francisco, the defendant has become the owner of all the right, title, and interest of said city therein, and is now

lawfully entitled to the possession, and is in possession thereof, as successor in interest of said city.

Upon the trial plaintiff introduced in evidence the aforesaid red line map, showing the relative positions of block 22 and Channel Street. A witness then testified on behalf of the plaintiff that he was the engineer of the state harbor commission, and that he had examined the said red line map, and was unable from the scale noted thereon to determine the length or width of the blocks thereon delineated. Upon this evidence the plaintiff rested its case. Thereupon the defendant moved the court for a judgment of nonsuit, on the ground that the plaintiff had not shown either the title, possession, or right of possession to the land described in the complaint. The motion was granted, and thereupon judgment was given in favor of the defendant for its costs. From this judgment the plaintiff prosecutes these appeals.

The pleadings put in issue the question whether the parcels of land were situated in Channel Street or in block 22. (*Burris* v. *People's Ditch Co.,* 104 Cal. 253, [37 Pac. 922].) In order to make out its case it was necessary for the plaintiff to prove that they were in Channel Street. The case was tried and submitted upon that theory. The act of 1851, under which the aforesaid red line map was prepared, purports to grant to the city of San Francisco, for the term of ninety-nine years from March 26, 1851, the use and occupation of all the lots of land delineated on said red line map. The right of possession of the said lots, block 22 being one of them, thereupon passed from the state to the city of San Francisco, except as modified by section 6 of the act, which declares that nothing therein shall be construed "as a surrender by the state of its right to regulate the construction of wharves or other improvements, so that they shall not interfere with the shipping and commercial interests of the bay and harbor of San Francisco."

The red line map showed that block 22 lies immediately northerly of and abutting upon Channel Street, and that it forms no part of that street. It constituted no evidence of the fact in issue, that the parcels described in the complaint were portions of Channel Street, unless supplemented by additional evidence showing the width of Channel Street, and that the boundaries as set forth in the complaint, if extended thereon, would include portions of Channel Street

instead of portions of said block 22. The map gives no figures showing the width of the streets or the length and width of the blocks. The appellant in its brief admits that it does not show the width of Channel Street, or of block 22. No other proof on the subject was offered. Conceding, as claimed, that the court will take judicial notice of the fact that the state is the owner of Channel Street, the burden remained upon the plaintiff to introduce evidence sufficient to establish the fact that the possession of the defendant complained of encroached upon the legal boundaries of Channel Street. Having failed to do this, the court properly granted the nonsuit.

The appellant argues that all of the land inclosed within the red line map was originally tide-land belonging to the state; that the effect of the grant by the act of 1851 was to convey to San Francisco a ninety-nine year estate in all the lots delineated on the map, but that those of the streets which were arms of the bay and constituted navigable waters remained in the control and possession of the state, notwithstanding that grant (*People* v. *Williams,* 64 Cal. 498, [2 Pac. 393]); that one who asserts a change of the character of the land from tide-land to upland, must show the facts, and hence that the defendant has the burden of proving that its possessions were not a part of Channel Street, but consisted of portions of block 22, and that, as the court had no judicial knowledge that the property in possession of the defendant was not within the boundaries of Channel Street, it must presume that they were within that street, and that the plaintiff was entitled to possession thereof. We cannot see the force of this reasoning. The court takes judicial notice of the red line map (*Merritt* v. *Barta,* 158 Cal. 381, [111 Pac. 259]), but it cannot take judicial notice of the extent of the possessions of the various persons who occupy lands within the red lines. The act of March 26, 1868 (Stats. 1867–68, p. 355), declared that there should be a navigable channel in the middle of Channel Street which was to be 140 feet wide. If Channel Street was laid off to be two hundred feet in width, which plaintiff alleged but did not prove, the courses and distances given in the plaintiff's descriptions would bring the strips in controversy outside and northerly of this 140-foot channel, and presumptively they would not be in navigable water. Section 2 of the act of 1878 (Stats.

1877–78, p. 263) declares that the jurisdiction of the board of state harbor commissioners over Channel Street shall extend as far as the ebb and flow of tide water. The appellants argue that as all of the land was originally under the ebb and flow of tide water, anyone who claims possession under the grant of 1851 must show that his land is above high tide, and that in the absence of such showing, the court should have found that the parcels possessed by the defendant were under the ebb and flow of the tide, and consequently within the jurisdiction of the harbor commission. We need not determine here whether or not the grant of 1851 transferred to the city of San Francisco the power to exclude from navigation the blocks delineated upon the map, as distinguished from the streets, notwithstanding provisions of the act of 1878. Assuming that some of the blocks may not have been reclaimed, and that the tide still ebbs and flows over them, there is no law which requires the court to take judicial knowledge of the extent of such flow. The court cannot know that any particular block is still subject to the ebb and flow of the tide. The presumption from the grant of 1851 would be that the blocks, even if within the ebb and flow of the tide, were not navigable, or that the public easement for navigation was intended to be abandoned as to them, and consequently that they are not now within the jurisdiction of the state harbor commission. The evident purpose of the grant of 1851 was to enable the city of San Francisco to cause the said blocks to be put in possession of private individuals, who might possess and improve the same, and, during the term of the estate given to the city at least, exclude them from use for navigation. If the plaintiff claims otherwise with respect to the particular property in controversy, it was incumbent upon it to offer evidence to prove that it constituted a part of the navigable channel.

The principles which control the rights of the state in tide-lands, its powers to make dispositions of such lands, and the rights of municipalities to whom it has delegated the disposition, supervision, and control of such lands, have been the subject of extended consideration by this court in cases decided since the present action was begun. (*People* v. *California Fish Co.*, 166 Cal. 576, [138 Pac. 79] ; *People* v. *Southern Pacific Co.*, 166 Cal. 614, [138 Pac. 94] ; *People* v. *Southern Pacific Co.*, 166 Cal. 627, [138 Pac. 103] ; *People* v.

*Banning Co.,* 166 Cal. 630, [138 Pac. 100] ; *People* v. *Banning, Co.,* 166 Cal. 635, [138 Pac. 101] ; *People* v. *Banning Co.,* 167 Cal. 643, [140 Pac. 587] ; *People* v. *Banning Co.,* 167 Cal. 652, [140 Pac. 591] ; *Patton* v. *Los Angeles,* 169 Cal. 521, [147 Pac. 141] ; *Knudson* v. *Kearney,* 171 Cal. 250, [152 Pac. 541].) The last case cited deals particularly with the subject of dispositions of tide-lands to the city of San Francisco in furtherance of navigation. The briefs in the present case discuss these questions extensively, and endeavor to apply the principles there laid down, to the facts existing in this case. In view of the lack of evidence to prove possession, we do not think the questions arise, and therefore we decline to consider them.

The judgment is affirmed.

Sloss, J., Richards, J., *pro tem.,* Victor E. Shaw, J., *pro tem.,* Melvin, J., Wilbur, J., and Angellotti, C. J., concurred.