[S. F. No. 16121.   In Bank.—June 24, 1941.]

HENRY COWELL LIME & CEMENT COMPANY (a Corporation), Respondent, v. THE STATE OF CALIFORNIA et al., Defendants; P. W. MEHERIN et al., as Members of State Board of Harbor Commissioners, etc., Appellants.

Earl Warren, Attorney General, W. T. Sweigert, Assistant Attorney General, and Lucas E. Kilkenny, Deputy Attorney General, for Appellants.

Thelen & Marrin for Respondent.

THE COURT.—The defendants appeal from a judgment rendered on June 27, 1938, by which they were permanently enjoined from entering upon certain real property in the city of San Francisco, on which the Cowell Building now stands. The building has a frontage on the northerly line of Market Street between Sacramento Street and the Embarcadero and a frontage along the westerly line of the Embarcadero extending from Market to Commercial Street.

The question before the trial court was whether the Cowell Building encroaches on the Embarcadero to the extent of a narrow, triangular strip of land referred to as the "sliver" area, which is five feet wide at Market Street and tapers to nothing at Commercial Street.

The defendant Board of State Harbor Commissioners contends that the boundaries of the Embarcadero (formerly East Street) became fixed on January 30, 1866, when the Board of City Engineers' Map became effective, and that according to such map the area delineated as the Embarcadero shows such encroachment. The plaintiff contends that East Street was first dedicated as a public street and its boundaries fixed on March 5, 1864 (Stats. 1863–1864, p. 138), and that long prior thereto its predecessors in title and interest had been in uninterrupted and continuous possession and had acquired title to all the land on which the Cowell Building now stands. The plaintiff further contends that the provisions of the Act of March 5, 1864, specifically excluded from the area dedicated as East Street all the land on which the Cowell Building is constructed.

The trial court based its decision in favor of the plaintiff principally on the finding that prior to the Act of March 5, 1864, the plaintiff and its predecessors in interest had acquired title by adverse possession to all the land on which the Cowell Building now stands. If there was evidence sufficient to support such finding the judgment must be affirmed. (*Dreyer* v. *Cole,* 210 Cal. 339 [292 Pac. 123] ; *Balzer* v. *Caler,* 11 Cal. (2d) 663 [82 Pac. (2d) 19] ; vol. 1, Cal. Jur. 10-Yr. Supp., p. 557.)

The evidence disclosed the following facts: In 1853 the State of California granted to the city of San Francisco for a period of ninety-nine years the use and occupation of certain property along the San Francisco waterfront, which area was then covered with the waters of the bay. By the conveyance it was contemplated that the lots should be filled in and utilized for the purpose of business and industry. (See *People* v. *Southern Pacific Co.,* 177 Cal. 555, 559 [171 Pac. 294] ; *People* v. *California Fish Co.,* 166 Cal. 576, 585 [138 Pac. 79] ; *United States* v. *Mission Rock Co.,* 189 U. S. 391, 405–406 [23 Sup. Ct. 606, 47 L. Ed. 865] ; *Pacific Gas Imp. Co.* v. *Ellert,* 64 Fed. 421, 431–434.) Thereafter, and in December, 1853, the city sold into private ownership a large portion of the lots, and the area was soon occupied by buildings. The land on which the Cowell Building is situated was acquired at the sale by the plaintiff's predecessors who went into possession in January, 1854, and erected a frame building on pilings, beneath which the tide ebbed and flowed. It may here be said, parenthetically, that there was abundant evidence adduced at the trial, which was uncontradicted, to show that the frame building referred to was erected on the same area and within the same boundaries as the space which is now occupied by the Cowell Building. About a year after the city sold the lots it was determined that the ordinance authorizing the sale was void, due to irregularity in its enactment (see *Pimental* v. *City of San Francisco,* 21 Cal. 351, 361; *Satterlee* v. *San Francisco,* 23 Cal. 314, 318) and that the purchasers of the lots had acquired no valid title thereto. However, the plaintiff's predecessors remained in possession of the property they had purchased, claiming title and right to possession. The easterly line of the frame building (which corresponds to the line of the Cowell Building fronting on the Embarcadero) then lay along an open area which

was used as a public street, and known as East Street. However, such area had not been legally dedicated as a public street prior to the Act of March 5, 1864. At that time the legislature dedicated East Street in such manner as to exclude from the area dedicated any portion of the land (including the "sliver" area) on which the frame building was then standing. The plaintiff's predecessors had then been in possession of the property for a period in excess of ten years.

The defendants contend, however, that the plaintiff's predecessors could not have acquired title by adverse possession against either the state or the city during the period referred to because prior to the sale of the lots the area which was sold had been dedicated as a public dock, or city slip.

■ The rule with respect to the acquisition of title by adverse possession as against a governmental agency is set forth in *Richert* v. *City of San Diego*, 109 Cal. App. 548, 553–554 [293 Pac. 673], as follows: "Where land held by the state or any of its subdivisions has been actually reserved for or dedicated to some specific public use there can be no adverse holding thereof which can give title to the adverse claimant." But the court went on to say, "The law is likewise clear that if land held by the state or any of its subdivisions is neither reserved for nor dedicated to some public use and may be alienated by its owner, title may be wrested from it by adverse possession." (See, also, *Ames* v. *City of San Diego*, 101 Cal. 390, 393–394 [35 Pac. 1005]; *People* v. *Banning Co.*, 167 Cal. 643, 649 [140 Pac. 587]; *Board of Education* v. *Martin*, 92 Cal. 209, 213 [28 Pac. 799]; *San Francisco* v. *Straut*, 84 Cal. 124 [24 Pac. 814]; *Orack* v. *Powelson*, 3 Cal. App. 282, 285 [85 Pac. 129].) In *City and County of San Francisco* v. *Calderwood*, 31 Cal. 585, 589 [91 Am. Dec. 542], it was held that there had been no legal dedication of the area here involved as a city slip; that such area had never been used as a public dock, and that an ordinance purporting to dedicate some of the waterfront lots as a city slip amounted merely to an "offer to dedicate". The court therefore ruled in an action for ejectment brought by the city against one of the purchasers at the city sale, that the defendant was entitled to rely on the defense of adverse possession. The same ruling was made in *McCracken* v. *City of San Francisco*, 16 Cal. 591, pp. 633, 640. (See, also, 26 Cal. Jur., p. 594; *Peo-*

*ple* v. *Williams,* 64 Cal. 498, 502 [2 Pac. 393]; *Pacific Gas Improvement Co.* v. *Ellert,* 64 Fed. 421, 431–434.) Although those decisions would not necessarily be controlling in the present case, it was said in the decision last cited, where reference was made to many of the early cases involving the sale of the water lots, including the Calderwood case, that such cases "cover a period of 40 years, and have become a rule of property, and the foundation of many titles." The same comment was made in *United States* v. *Mission Rock Co.,* 189 U. S. 391, 406 [23 Sup. Ct. 606, 47 L. Ed. 865]. ██ But aside from the import of those decisions there was evidence before the trial court in the present case to support the implied finding that there had been no valid dedication of a city slip in the water lot area. The evidence showed that the city had specifically reserved the right to revoke the purported dedication. It also showed that the area was never used as a city slip, but, instead, and almost immediately after the sale, buildings were erected throughout the area. The question whether there has been a valid dedication or revocation of an offer to dedicate is ordinarily one of fact. (*Sacramento* v. *Clunie,* 120 Cal. 29 [52 Pac. 44]; *City of Yuba City* v. *Consolidated Mausoleum Syndicate,* 207 Cal. 587 [279 Pac. 427, 66 A. L. R. 318]; *City of Los Angeles* v. *Kysor,* 125 Cal. 463, 465 [58 Pac. 90].) There being evidence to support the implied finding of lack of dedication, the conclusion of the trial court thereon cannot be disturbed.

██ It follows from the foregoing that prior to March 5, 1864, the plaintiff's predecessors had acquired title by adverse possession to all the land on which the Cowell Building is now situated, and that no part of the "sliver" area was ever a part of the Embarcadero.

In view of our conclusion thereon, other questions raised by the parties need not be discussed.

The judgment is affirmed.