## JAMES A. ROOSEVELT

*v.*

## JEHU J. HUNGATE.

*Filed at Mt. Vernon September 27, 1884.*

1. EJECTMENT—*evidence showing prima facie case for plaintiff.* On the trial of an action of ejectment, the plaintiff showed, by affidavit, that a certain person was the common source of each party's title, and then introduced in evidence a deed of conveyance from the person so shown to be the common source of title, and rested: *Held,* that this proof made out a *prima facie* case for the plaintiff, and entitled him to recover unless a good defence was shown.

2. SAME—*special pleas held improper.* In ejectment the defendant pleaded two special pleas: First, that the defendant held possession from the plaintiff as a tenant from year to year, which tenancy had not been terminated by sixty days' notice prior to the end of the year; and second, that the defendant held the lands by virtue of a written lease from the plaintiff, from March 1, 1883, to March 1, 1884,—the suit having been brought prior to the latter day: *Held,* that these pleas were wholly improper, as every matter of defence in them was admissible under the general issue, which was also pleaded.

3. LANDLORD AND TENANT—*tenancy from year to year—notice to terminate.* The owner of land, before bringing his action of ejectment to recover possession, is not bound to give the defendant notice to terminate his tenancy from year to year, unless such defendant holds as the tenant of the plaintiff, or as the tenant of his grantor.

4. SAME—*tenancy from year to year terminated by taking new lease.* If a tenant from year to year accepts a new lease for a definite period, the prior tenancy is terminated, and no notice is necessary to terminate the new tenancy, prior to the end of the term.

5. SAME—*owner not bound by lease of a stranger.* Before a written lease can be set up by the defendant to defeat an action of ejectment brought by the owner of the land, it must appear that the plaintiff, or his grantor, executed the same, or that the person executing the same was the authorized agent of the plaintiff to lease the property.

WRIT OF ERROR to the Circuit Court of Clay county; the Hon. WILLIAM C. JONES, Judge, presiding.

This is an action of ejectment, brought by James Roosevelt, against Jehu J. Hungate, in the circuit court of Clay county, on March 7, 1883, to recover possession of the south half of the south-east quarter of section 24, the north-east quarter of section 25, the south half of the north-east quarter of section 26, the south-west quarter of the north-west quarter of section 26, and the north half of the south-east quarter of section 26, all in township 5, north, range 6, east; also, the south half of the south-west quarter of section 19, and the north-west quarter of section 30, both in township 5, north, range 7, east of the third principal meridian, the plaintiff claiming the title in fee. The defendant pleaded the general issue, and three special pleas, as follows: First, title in the defendant to the north-east quarter of the north-west quarter of section 25, township 5, north, range 6, east; second, that as to all the lands except the north-east quarter of the north-west quarter of section 25, township 5, north, range 6, east, the defendant holds under the plaintiff as tenant from year to year, and was entitled to sixty days' notice prior to March 1, 1883, to surrender the premises, and that he did not receive such notice; and third, that he holds said lands, except the north-east quarter of the north-west quarter of section 25, township 5, north, range 6, east, by virtue of a written lease from plaintiff to defendant, from March 1, 1883, to March 1, 1884. The plaintiff dismissed the suit as to the north-east quarter of the north-west quarter of section 25, township 5, north, range 6, east, and issues were taken upon the pleas, and a jury waived, and the cause was tried by the court, which found the issues for the defendant, and rendered judgment against the plaintiff, to reverse which judgment the plaintiff prosecutes this writ of error.

On the trial the plaintiff introduced evidence of title in himself, acquired some time in November, 1878. The defendant then called M. H. Presley, who testified that in 1878 a man, whom he afterwards learned was Lardner, came to his

office in Flora and represented himself to be the agent of the Equitable Trust Company, and requested him to take charge of and run the farm in controversy, which he consented to do; that Lardner then said he would write to the Equitable Trust Company about the matter, and have it write to the witness about the farm; that in a short time after such conversation he received the following letter from that company:

"NEW YORK, *July 12, 1878.*

"*To Messrs. Presley & Gray, Flora, Illinois:*

"GENTLEMEN—We will ask you to take charge of the renting of the farm conveyed to us by Granville Bates, and use your best efforts to obtain from it all the income that it is capable of producing. Please report to us frequently what proceeds you make, with statements of the names of tenants, the amount of land rented to each, and the rent he is to pay. We rely upon your judgment and enterprise to manage to the best advantage of this company.

"Very truly yours,

JOHN ROCKWELL, *Supervisor.*"

The plaintiff objected to the witness giving the statements of Lardner, and the conversation with him, and to the introduction of the letter in evidence; but the court overruled the several objections and admitted the evidence, and plaintiff excepted.

The witness Presley further testified, that under the authority conferred by this letter he leased the lands in controversy to the defendant, and identified the leases shown him. The defendant then offered the three leases in evidence. The plaintiff objected to their admission, for the reason that none of the leases were made by the plaintiff, or by his authority, but the court overruled the objection, and received the leases in evidence. The first lease was dated February 1, 1879, and purported to be between James A. Roosevelt, of the first part, and John D. P. Hungate and

J. J. Hungate, of the second part, and to lease what is known as the "Bates farm," to the parties of the second part for one year, from March 1, 1879, for $300 rent, and was signed as follows: "James A. Roosevelt, by M. H. Presley, agent," and "John D. P. Hungate" and "Jehu J. Hungate." The second lease was dated May 9, 1881, and recited that Presley had rented to Jehu J. Hungate the Hungate or Bates farm, for two years, from March 1, 1881, till March 1, 1883, on certain conditions therein named, and was signed, "M. H. Presley, agent," and "Jehu J. Hungate." The last lease or agreement was dated April 28, 1882, and extended the prior leasing one year longer, and was signed in the same mode as the preceding one.

The witness further testified that defendant was a good tenant, and had paid all the rent due under any of the leases up to March 1, 1883, and that witness remitted the rents, when paid, to the Equitable Trust Company. On cross-examination he testified that he never saw or had any correspondence with James A. Roosevelt, and never had any authority from him to take charge of or lease the lands. He also testified that he turned over his agency to Clutter, by direction of the company. Jehu J. Hungate testified that he had paid all the rents due under any of the leases, and performed all the conditions to be performed by him; that he had been in possession of the land some two or three years prior to the purchase by Roosevelt, and was in possession at the time of his purchase, under other owners, whose names are not stated; that after Roosevelt purchased, he rented of Presley, paid the rent to him until he turned over his agency to Clutter, and had since paid to Clutter and the bank the balance. In rebuttal the plaintiff called Henry B. Kepley, who testified that he knew the Equitable Trust Company and its officers; that the plaintiff was not the president of that company, and that he thought he never was its president or any officer thereof, and so far as he (witness) knew

was not even a member of the company; that for many years Jonathan Edwards was president of said company, and since the death of Edwards, F. B. Elliott has been president of that company, and that he did not know of his own knowledge if plaintiff was ever connected with said company. This was substantially all the evidence in the case.

Mr. HENRY B. KEPLEY, for the plaintiff in error:

Proof of a lease to defendant from any person other than the plaintiff, does not maintain the issue on the plea of lease of the plaintiff, and such proof was not admissible.

The only lease covering the time mentioned in the plea,— from March, 1883, to March, 1884,—is from "M. H. Presley, agent." The proof is clear that Presley acted as agent of the Equitable Trust Company, and that he did not act for the plaintiff, and had no authority from him.

The proof failing to show the existence of the relation of landlord and tenant between the plaintiff and defendant, there was, in no event, any notice required. *Herrell* v. *Sizeland,* 81 Ill. 457.

In ejectment the legal title must prevail. *Wilson* v. *South Park Comrs.* 70 Ill. 46; *Aholtz* v. *Zellars,* 88 id. 24; *Johnson* v. *Watson,* 87 id. 535; *Chiniquy* v. *Catholic Bishop,* 41 id. 148; *Wales* v. *Bogue,* 31 id. 164.

Mr. F. G. COCKRELL, for the defendant in error:

A jury being waived and the case tried by the court, does not obviate the necessity of entering a motion for a new trial. *Bills* v. *Stanton,* 69 Ill. 51; *Reichwald* v. *Gaylord,* 73 id. 503.

If counsel for plaintiff desired to call in question the ruling of the circuit court on the legal effect of the evidence offered, he should have submitted written propositions of law. *Fitch* v. *Johnson,* 104 Ill. 111; *Bridge Co.* v. *Comrs. of Highways,* 101 id. 518; *Hobbs* v. *Ferguson,* 100 id. 232.

The right to file the special pleas in this case has been doubted. We think they were proper. *Sheldon* v. *Van Vleck*, 106 Ill. 45.

Counsel also contended that Presley, in making the leases, was the agent of the plaintiff, and that plaintiff ratified the leasing by collecting the rents, or a portion of them.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is an action of ejectment, brought by appellant, against appellee. On the trial below the plaintiff showed, by affidavit, that Adrian Iselin was the common source of each party's title to all the lands in dispute, except the undivided one-sixth part of a certain forty-acre tract, and that Stephen McKnelly was the common source of title as to that. He then introduced in evidence a deed from Adrian Iselin and wife, to the plaintiff, dated November 9, 1878, for all the lands, except the undivided one-sixth part of the forty-acre tract, and a deed from Stephen McKnelly and wife for that interest. This proof made out a *prima facie* case for the plaintiff, and entitled him to a judgment for the lands, unless a good defence was shown by the defendant. The defendant offered no evidence whatever of title in himself, or in a third person. The second special plea is, that the defendant holds possession from the plaintiff as a tenant from year to year, which tenancy has not been terminated by sixty days' notice prior to the end of the year. The third special plea is, that the defendant holds the lands by virtue of a written lease from the plaintiff, from March 1, 1883, to March 1, 1884. The evidence fails to establish either defence.

It appears that the defendant was in possession of the lands prior to the time the plaintiff acquired his title thereto in November, 1878. On this point the defendant testifies: "I had been in possession of the land under other owners some two or three years prior to the purchase by Roosevelt, and I was still in the possession at the time of such purchase,

and after Roosevelt purchased I rented of Presley." There is no evidence showing under whom he went into possession, or under whom he was holding when Roosevelt acquired his title. There is nothing in the record from which even an inference may be drawn that he was holding under the grantors of Roosevelt. In such a case Roosevelt was under no obligation to give any notice to terminate a tenancy from year to year, if any such existed. And if such a tenancy had been shown as was binding on the plaintiff when he bought, it was terminated when the defendant and John D. P. Hungate accepted a lease from Presley, agent, dated February 1, 1879, for one year. That lease created a tenancy for a definite term, and defendant's rights thereafter were fixed by it. The tenants under this lease held over one year. But on May 9, 1881, M. H. Presley, as agent for some one whose name is not disclosed in the writing, again leased the premises to the defendant alone, for the term of two years, from March 1, 1881, and on April 28, 1882, "Presley, agent," extended the lease one year, so that the term should extend to March 1, 1884.

The plaintiff, on the trial, objected to the introduction in evidence of these three leases. They had no tendency to establish a tenancy under the plaintiff. The plaintiff is not shown to have made or authorized any of them. The last two do not even purport to bind the plaintiff. It is true Presley signs the same as agent, but the instruments on their face fail to show for whom he was acting as agent. If we take the testimony of Presley, it clearly shows that he was not taking charge of and renting the same for and on behalf of the plaintiff, but for the Equitable Trust Company. On cross-examination he says: "I never saw James A. Roosevelt, and I never had any correspondence with him. I never had any authority from him to take charge of or rent the said farm in controversy in this suit. I had no other authority to take charge of said farm than derived from said conversa-

tion with Lardner, before alluded to, and the letter from the Equitable Trust Company. It was by that authority, and no other, that I leased the said farm to the said defendant."

It is claimed that the plaintiff has ratified the last leasing by Presley to the defendant, by receiving the rent from the defendant. We think the evidence does not show anything said or done in this regard by plaintiff. The only evidence in this respect is that of Presley and the defendant. Presley testified: "After I had extended the lease of Hungate to March 1, 1884, I was directed by the Equitable Trust Company to turn over my agency to Clutter, of Effingham, Illinois, which I did. After meeting Clutter and Mr. Kepley I turned over the notes of Hungate to Clutter, which were given in consideration of the extended lease, and Hungate has paid the notes due, to Clutter. I am not sure but one note has been paid to Mr. Kepley, through the First National Bank of Flora." Mr. Kepley is the attorney for plaintiff in this action. The defendant testified that during the last summer and fall both Kepley and Clutter tried to scare him out, and get him to give up the farm or lease from them; that he paid the rent to Presley until he turned over his agency to Clutter, and that he paid the balance of the rent to Clutter, except the last note, which was sent to the bank in Flora, when he paid it, but that he did not know to whom the bank paid it. This is not sufficient to show that Clutter took the defendant's notes as agent for the plaintiff. The evidence rather tends to show that Clutter received the notes as agent for the Equitable Trust Company, which directed Presley to turn over his agency to him. There is nothing in the proofs which overcomes plaintiff's case as made.

It may be remarked that the special pleas were wholly improper, as every matter of defence contained in them was properly admissible in evidence under the general issue.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*