[Civ. No. 12376.  First Dist., Div. Two.  May 5, 1944.]

N. A. BLUME, Appellant, v. C. M. MacGREGOR et al., Respondents.

Robert E. Knowlden and Johnson & Harmon for Appellant.

T. P. Wittschen, McKee, Tasheira & Wahrhaftig and Ridley Stone for Respondents.

DOOLING, J. pro tem.—Through the town of Albany, in Alameda County, runs a railroad right of way 40 feet in width, occupied and used since shortly after 1900, at the very least, by the Atchison, Topeka and Santa Fe Railway Co. as a part of its main line in that section. The Santa Fe, to give the railway company its popular name, claims title to this strip of land by mesne conveyances through deeds originally exe-

cuted in 1884 to California and Nevada Railroad Company by Pacific Improvement Company as to an undivided two-thirds and by Maria Hall as to an undivided one-third respectively. The descriptions in these two deeds of 1884, which were in identical terms, are patently incomplete upon their face. In these incomplete descriptions lay the hardy seeds of future litigation which, after lying dormant and apparently unnoticed for over fifty years, finally germinated and bore fruit in the instant action.

The action commenced with the filing of a complaint in ejectment by plaintiff and appellant Blume against defendants and respondents. This complaint, for reasons which may be readily surmised and will later become apparent, was adroitly drawn to cast doubt upon the defendants' title to a ten-foot strip of land immediately adjoining the above mentioned Santa Fe right of way, without making a frontal attack upon such title. This was done by alleging that plaintiff is the owner in fee of a larger parcel of land described so as to include the Santa Fe right of way and all of said ten-foot strip except a small portion thereof two one-hundredths of a foot wide and then expressly excepting from this description any and every part of the property before described "which is described in the deed from Berkeley Development Company to C. M. MacGregor dated December 17, 1925." The real claim of plaintiff, although not in express terms alleged in the complaint, was that the description in the 1925 deed from Berkeley Development Company to MacGregor was defective because it tied in by reference as its easterly boundary to the strip of land granted in 1884 by Pacific Improvement Company to California and Nevada Railroad Company, and the 1884 description in turn was so defective that it could not be located on the ground. The description in this deed to MacGregor had been copied verbatim into the judgment quieting MacGregor's title to this ten-foot strip, which judgment was affirmed in *MacGregor* v. *Knowlden,* 102 Cal.App. 42 [282 P. 438]. (The ten-foot strip involved in this action is a part of parcel 3 discussed by this court in *MacGregor* v. *Knowlden, supra,* commencing at page 49.) The effect of the description as pleaded in the complaint herein was therefore to cast doubt by the same method of indirection upon the sufficiency of the judgment affirmed in *MacGregor* v. *Knowlden, supra,* to describe or quiet title to any property in MacGregor.

We may pause here to note that one of the defendants in *MacGregor* v. *Knowlden, supra,* appears in the present action in the dual capacity of one of the attorneys for plaintiff Blume and a grantor of the plaintiff. The judgment in *Mac-Gregor* v. *Knowlden, supra,* enjoined the defendants and all persons claiming under them from claiming or asserting any interest in the property as to which MacGregor's title was thereby quieted. The record makes clear the fact that contempt proceedings had at some time been instituted against this attorney for violating the terms of this injunction and on the trial of this action at one stage of the proceedings he objected to answering questions concerning his connection with the deeds to his client, Blume, giving as one ground of his objection to doing so, to quote: ''I don't know what he has in mind here, whether he is attempting to lay a foundation to have Mr. Blume declared in contempt I don't know, but if he has, I think it is highly improper for him to go into it.'' We have no doubt that the unusual manner of pleading the description of the property involved in the complaint was in the effort to avoid having either this attorney or his client run any risk of further contempt proceedings based upon their prosecution of the present action. This they sought to do by describing the property so as to include most of the ten-foot strip and then excluding therefrom any property included in the 1925 deed to MacGregor. If the ten-foot strip was found to be included in that deed (and hence in the judgment in *MacGregor* v. *Knowlden, supra*) they could not be in contempt because their complaint expressly excluded it from the property in litigation. If they succeeded in convincing the court that the 1925 deed to MacGregor did not describe the ten-foot strip they could not be in contempt because it would then not be described in the judgment in *MacGregor* v. *Knowlden, supra.*

Against the complaint so drawn defendants and respondents were compelled to join issue, since if they defaulted or disclaimed the cloud thus cast upon their title could only be removed by subsequent litigation. Fourteen sets of defendants joined in a cross-complaint to quiet title to fourteen separate lots improved with residence buildings. In each count of this cross-complaint it was alleged that the lot therein described was improved with a dwelling house, that the rear ten feet of each lot was involved in the ejectment action and, by amendment, that a portion of each dwelling house was

constructed on the ten-foot strip and that each dwelling occupies almost all of said lot including the ten-foot strip as an integral part thereof.

Appellant, relying on *Pacific Palisades Assn.* v. *Menninger,* 219 Cal. 257 [26 P.2d 303] and similar cases, claims that it was improper to allow cross-complainants to seek to quiet title to property not described in his complaint. It is clear that the allegations of this cross-complaint bring.it within the rule recently so.plainly stated in *People* v. *Buellton Development Co.,* 58 Cal.App.2d 178, 189 [136 P.2d 793] in the following language:

"But it is well established that in an action involving land as its subject matter, a cross-complaint affecting that land and also other land may properly be filed, where the cause of action set up therein affects such other land and that described in the complaint as a unit, or in such manner that one cannot be separated from the other without prejudice to the party filing the cross-complaint." (*Cf.* the cases cited on pages 189 and 190 in support of the quoted statement.)

The issues raised by the cross-complaint, being equitable, were properly tried first. (*Thomson* v. *Thomson,* 7 Cal.2d 671, 682 [62 P.2d 358, 117 A.L.R. 1].) The court was right in not signing findings and entering judgment on the cross-complaint before trying the legal issues raised by the complaint. Issues between the same parties in the same litigation should not be decided piecemeal, but should all be settled by one set of findings and one judgment. (*de Vally* v. *Kendall de Vally O. Co., Ltd.,* 220 Cal. 742, 745-6 [32 P.2d 638]; *Stockton etc. Works* v. *Glens Falls Ins. Co.,* 98 Cal. 557, 577 [33 P. 633].)

The final judgment denied appellant any relief and quieted cross-complainants' title to the several lots described in the cross-complaint. The true issue as to the ten-foot strip, as developed at the trial, arose from the fact that the description of the land conveyed in 1884 by Pacific Improvement Company to California and Nevada Railroad Company omitted certain courses and distances and if followed literally described an irregular parcel varying in width from approximately 14 feet at its narrowest, to over 80 feet at its widest, and would only close by drawing an arbitrary line from the end of the last course given to the point of beginning. The omission of certain courses and distances by the scrivener is

graphically illustrated by the following table, in which the northerly and southerly calls are placed in parallel columns with dashes inserted where the southerly calls corresponding to certain northerly calls have been omitted:

| Read Down | | | | Read Up | | |
|---|---|---|---|---|---|---|
| N. 70° E. 20 ft. along center of Cordonices Creek; thence from said center: | | | | N. 70° E. 20 ft. to point of beginning. | | |
| N. 20° | W. | 494 | ft. | S. 20° | E. | 494 ft. |
| N. 19° | W. | 99 | ft. | S. 19° | E. | 101 ft. |
| N. 17° | W. | 99 | ft. | S. 17° | E. | 100 ft. |
| N. 15¼° | W. | 74 | ft. | S. 15¼° | E. | 76 ft. |
| N. 14½° | W. | 3425 | ft. | S. 14½° | E. | 3425 ft. |
| N. 8½° | W. | 100 | ft. | S. 8½° | E. | 100 ft. |
| N. 14½° | W. | 400 | ft. | .................... | | |
| N. 20½° | W. | 100 | ft. | .................... | | |
| N. 14½° | W. | 300 | ft. | S. 14½° | E. | 300 ft. |
| N. 15° | W. | 100 | ft. | S. 15° | E. | 100 ft. |
| N. 16° | W. | 100 | ft. | S. 16° | E. | 100 ft. |
| N. 17° | W. | 100 | ft. | S. 17° | E. | 99 ft. |
| N. 18° | W. | 100 | ft. | S. 18° | E. | 100 ft. |
| N. 19° | W. | 100 | ft. | .................... | | |
| N. 20° | W. | 101 | ft. | .................... | | |
| N. 21° | W. | 100 | ft. | .................... | | |
| N. 22° | W. | 100 | ft. | S. 22° | E. | 100 ft. |
| N. 23° | W. | 101 | ft. | S. 23° | E. | 99 ft. |
| to center of Cerritos Creek S. 66½° W. 40 ft. (along center of Cerritos Creek.) | | | | | | |

In view of the fact that this 1884 conveyance was expressed to be of ''a strip of land'' and ''for the right of way of its (grantee's) railroad'', the missing courses and distances fairly suggest themselves on the face of the deed, bearing in mind the well known fact that railroad rights of way are commonly strips of land of a uniform width. In any event the evidence shows that by starting at a point in Cordonices Creek where the center of the existing right of way actually occupied by the Santa Fe crosses said creek and tracing the courses and distances of this 1884 deed, the northerly calls follow, with very slight variation, the easterly boundary of the forty-foot strip now used and claimed by the Santa Fe as its right of

way; and by supplying the missing southerly calls on the westerly side and making them correspond to the appropriate northerly calls, the description so arrived at describes a strip of land of a uniform width of forty feet substantially following the boundaries of the Santa Fe right of way on the ground. An expert witness further testified that the strip so laid out contains 5.72 acres, as compared to 5.73 acres called for by the 1884 deed. It further appears that by starting at the end and tracing the calls backward to the first omitted call the calls so traced coincide with the line arrived at by supplying the missing calls.

The trial court found that ''as to each and every of the fourteen parcels . . . the rear portion of each parcel consists of a ten foot strip of land immediately adjacent on the west and parallel to the railroad right of way commonly called the 'Santa Fe Right of Way' . . . .'' The above recited evidence amply supports this finding, to which legal support is given by the following briefly summarized rules of law:

█ Such interpretation must be given to a deed as to make it effective rather than to defeat it. (*Hall* v. *Bartlett*, 158 Cal. 638, 642 [112 P. 176]; 9 Cal.Jur. 258-9; Civ.Code, § 3541.) █ A deed indefinite in terms may be made certain by the conduct of the parties acting under it. (*Pio Pico* v. *Coleman*, 47 Cal. 65; *Schmidt* v. *Klotz*, 130 Cal. 223 [62 P. 470]; *California Packing Corp.* v. *Grove*, 51 Cal.App. 253, 257-8 [196 P. 891]; 9 Cal.Jur. 303; 18 C.J. 262, 279; 26 C.J.S. 346, 360.) █ An omission of part of the boundaries or calls is not fatal to the validity of a deed, where such boundaries or calls can be supplied or the description rendered certain. (26 C.J.S. 220; 18 C.J. 185; *Fortenberry* v. *Cruse*, (Tex.Civ.App.) 199 S.W. 523; *Ray* v. *Pease*, 95 Ga. 153 [22 S.E. 190]; *Cornett* v. *Creech*, 30 Ky.L.Rep. 1265 [100 S.W. 1188]; *Myers* v. *Hatler*, 121 Ore. 332 [254 P. 355]; *Grisham* v. *Tate*, (Tex.Civ.App.) 35 S.W.2d 264; Thompson on Real Property, perm. ed., vol. 6, § 3275, p. 446.) █ If the description is indefinite, as by the omission of a line, then a statement of the quantity may help to locate the boundaries. (4 Cal.Jur. 404; 9 Cal.Jur. 314-5.) █ In order to determine what land was intended to be described in case of ambiguity the description may be read by reversing the courses. (9 C.J. 169; 11 C.J.S. 549; *Walsh* v. *Hill*, 38 Cal. 481, 486.) █ In general if a competent surveyor can take the deed and locate the land on the ground from the descrip-

tion contained therein, with or without the aid of extrinsic evidence, the description will be held to be sufficient. (*Best* v. *Wohlford,* 144 Cal. 733, 738 [78 P. 293] ; *Thompson* v. *Mc-Kenna,* 22 Cal.App. 129, 132 [133 P. 512].)

Appellant contends that there is nothing in the record to connect the right of way conveyed to California and Nevada Railroad Company in 1884 with the present right of way of the Santa Fe.   On cross-examination of cross-complainants' witness Wilner counsel for appellant educed testimony tracing the Santa Fe's title to this strip back to California and Nevada Railroad Company.   In addition counsel for appellant read into the record testimony of a witness, Prather, given on the trial of *MacGregor* v. *Knowlden, supra.* In consenting to the use of this testimony on the ground that the witness was dead, counsel for respondents insisted that a map with letter attached which had been introduced as a part of Prather's testimony should go into evidence in this case. Mr. Wittschen (counsel for respondents) stated: ''The letter from the Santa Fe is attached to the map.   I want them both.''   He further stated that if the introduction of the letter was not agreed to he would be under the necessity of calling the writer thereof as a witness, and expressed the understanding that he too might be dead.   After a running discussion Mr. Johnson (counsel for appellant) said: ''If they want to put in the letter and map, that is all right.'' Pursuant to this stipulation letter and map were introduced. The map delineated the present Santa Fe right of way and the letter, signed by R. B. Ball, chief engineer of the Santa Fe, contained the following statement:

''Our deed record shows we have a width of 40 feet, a two-thirds interest in which is covered by deed recorded in Book 282, page 223, Records of Alameda County, the original of which is filed as our secretary's number 3974, and an undivided one-third interest by deed recorded in Book 284, page 91 of said County filed as our secretary's number 3975.''

The references to book and page correspond to the book and page at which the deeds from Pacific Improvement Company and Maria Hall to California and Nevada Railroad Company are respectively recorded.   This letter, although hearsay, having been admitted by stipulation, is competent evidence to connect the present Santa Fe right of way with the two deeds of 1884 to California and Nevada Railroad Company. (*Nelson* v. *Fernando Nelson & Sons,* 5 Cal.2d 511, 518 [55 P.2d 859].)

Appellant relies on a negative pregnant in the answer to support his claim of title to the portion of the ten-foot strip claimed by him. This is based on the fact that respondents denied that plaintiff "is the owner in fee" of the property described in his complaint. The insubstantiality of this contention is readily apparent by reference to the allegation attempted to be denied, but actually admitted, by the negative pregnant. The complaint, as earlier noticed, alleged that plaintiff "is the owner in fee" of a described tract, "Excepting and excluding therefrom: The part or portion, if any, of the above described property which is described in the deed from Berkeley Development Company, a corporation, to C. M. MacGregor, dated December 17, 1925 . . . ." The effect of the negative pregnant was to admit the ownership by plaintiff of the land described in the complaint excluding therefrom any land included in the exception stated in the complaint. If, as the court found, the ten-foot strip in controversy was described in the deed from Berkeley Development Company to MacGregor its ownership by plaintiff was not alleged in the complaint and therefore not admitted by the negative pregnant. Furthermore, the several counts of the cross-complaint were stated to be "as a further and separate defense, and as a . . . ground of cross-complaint." They severally alleged ownership in fee by the cross-complainants of the respective portions of the ten-foot strip claimed by each. Insofar as they were pleaded as a defense, they tendered the issue of ownership. "The rule is that it is not necessary in order to constitute a good traverse that it should be expressed in negative terms. It is sufficient if the matters set forth in the answer are contrary to what is charged in the complaint." (*Watterson* v. *Owens River Canal Co.,* 167 Cal. 370, 371 [139 P. 804]; *People* v. *Southern Pacific Co.,* 177 Cal. 555 [171 P. 294]; *Elliott* v. *Bertsch,* 59 Cal.App.2d 543 [139 P.2d 332].)

The first course in the description of the right of way in the 1884 deed from Pacific Improvement Company reads "north 70′ east 20 feet up Cordonices Creek." The closing course reads "north 70° east 20 feet to the point of beginning." A witness testified that it is not customary to write 70′, but if 70′ was actually intended it would be written "1° 10′." We might, without such evidence, take judicial notice that this is so. In the deed from Maria Hall the first call reads "70°" and not "70′." The court was justified in treating "70′" as a patent clerical misprision for "70°". (9 Cal.Jur. 301.)

The evidence showed that the cross-complainants by tacit sufferance of the Santa Fe raised some flowers and vegetables, and in some cases had some small greenhouses at the rear of their respective lots and inside of the railroad right of way. Appellant claims, by reason of the negative pregnant above discussed, that the court erred in not giving him judgment ejecting such respondents from the portions of the right of way so occupied. The evidence shows, as above outlined, that the Santa Fe has continuously occupied and used this strip of land for over 35 years under a chain of title tracing back to the 1884 deeds from Pacific Improvement Company and Maria Hall. Those 1884 deeds conveyed the land and not a mere easement. Appellant chose not to make the Santa Fe a party defendant. Cross-complainants herein claim no right or title to any part of this right of way, but recognize that such use as they are making of small parts thereof is subordinate to the rights of the Santa Fe and by its sufferance. Their casual occupancy makes them no more than implied licensees of the Santa Fe. So long as the Santa Fe continues to occupy the entire right of way to the exclusion of appellant we fail to see how appellant could gain any substantial rights by a judgment ejecting any of the respondents from trifling portions thereof. He has suffered no substantial prejudice in that respect which would justify a reversal.

The trial court found in favor of the cross-complainants on their cross-complaint and gave them judgment quieting their title to the respective parcels claimed by them. The findings were of record title and also title by adverse possession. Appellant attacks the finding of record title because cross-complainants proved their title only to a common source of title with appellant. This they did by introducing deeds showing a chain of title to themselves and also one to appellant by mesne conveyances from a common grantor. Appellant elected to put cross-complainants to their proof of title and introduced no evidence of his own title. Cross-complainants rely upon the rule that where both parties claim title from a common source it is not necessary to prove title back of that source. (*Central Nat. Bank* v. *Bell,* 5 Cal.2d 324, 328-9 [54 P.2d 1107] ; *Sorensen* v. *Hall,* 219 Cal. 680 [28 P.2d 667] ; *Cohn* v. *Klein,* 209 Cal. 421 [287 P. 459].) Appellant argues that cross-complainants cannot thus force upon him a claim of title that he did not make. He cites *McConnell* v. *Rhodes,*

14 Ga. 313, which supports him in his argument that one party cannot take advantage of the common source of title rule by proof merely that the other party has a chain of title from a common grantor. The rule announced in this early Georgia case is apparently no longer followed in that state, *(Beetles* v. *Steadham,* 186 Ga. 110 [197 S.E. 270, 271]) and the rule generally accepted in American jurisdictions is that a plaintiff makes a prima facie case by evidence connecting the defendant with a common source of title and proving in himself a better title from that source. (19 C.J. 1180, 1181; Sedgwick & Wait on Trial of Title to Land, § 803, p. 680; Warvelle on Ejectment, §§ 265, 266, pp. 274, 275; Note 47 Am.St.Rep. 75; *Keen* v. *Parker,* 217 N.C. 378 [8 S.E.2d 209, 214]; *Conner* v. *Jarrett,* 120 W.Va. 633 [200 S.E. 39, 41]; *Alexander* v. *Duncan,* 247 Ky. 422 [57 S.W.2d 58, 60]; *Norwegian Lutheran Church* v. *Armstrong,* 112 Mont. 528 [118 P.2d 380, 382]; *Anderson* v. *Reid,* 10 App.Cas.(D.C.) 426, 429; *Dean* v. *Gorton,* 177 Ill. 624 [52 N.E. 880]; *Bradley* v. *Lightcap,* 201 Ill. 511 [66 N.E. 546]; *Stewart Bros.* v. *Ransom,* 204 Ala. 589 [87 So. 89]; *Howell* v. *Shaw,* 183 N.C. 460 [112 S.E. 38]; *Vance* v. *Pritchard,* 213 N.C. 552 [197 S.E. 182]; *Roosevelt* v. *Hungate,* 110 Ill. 595, 600; *Zahm* v. *Dopp,* 19 N.Y.S. 863; *Rice* v. *St. Louis, A. & T. Ry. Co.,* 87 Tex. 90 [26 S.W. 1047, 47 Am.St.Rep. 72].)

The rule is stated in the note in 47 Am. St. Rep. at page 75 in the following language:

*"As a matter of evidence there is no doubt* that when either of the parties to an action for the recovery of real property, or otherwise affecting the title thereto, proves that both of the parties have acquired their respective titles from a common grantor, it will be assumed prima facie that such grantor was the owner of the property at the time he executed the first conveyance thereof, and the grantee in such conveyance or his successors in interest must recover the property as against any person claiming under a conveyance executed after that by which the common grantor first parted with his title."

Cross-complainants in this case proved chains of title to themselves and to plaintiff and cross-defendant from a common source and a superior title in themselves from this common source. They thereby established a prima facie case for recovery under the rule of evidence above discussed.

Cross-complainants also introduced a deed from one

Gansevoort-Nazzari and wife to appellant and appellant argues that they thereby nullified their prima facie showing of title from a common source. No authority is cited in support of this contention but the argument runs that having proved two possible sources of title in appellant cross-complainants are in no position to assert that appellant bases his claim of title on one rather than the other.

It seems to be the generally accepted rule that where both parties derive title from a common source the burden is placed upon the party having the inferior title from the common source, if he relies upon title from another independent source, to prove that the title acquired from the independent source is paramount to the title in the common source. The rule is thus stated in Sedgwick & Wait on Trial of Title to Land, § 803, p. 680:

"It is obviously sufficient, in order to make a prima facie case, to prove derivation of title from the common source; but it may be essential to go behind the common source. Hence, it is held that the rule is not strictly an estoppel, though often spoken of as such, but a rule of justice and convenience adopted by the courts to relieve the plaintiff from the necessity of going behind the common source. Where the defendant can show a better title outstanding, and has acquired it, the rule ceases to apply. When the defendant is allowed to impeach the common source of title he must establish that he himself has acquired a superior title, and except to this extent he is not permitted to invoke the rule that the defendant can defeat the plaintiff by showing a better title in a third person." (Cf. Warvelle on Ejectment pp. 276-7; *Stewart* v. *Cary*, 220 N.C. 214 [17 S.E.2d 29, 33]; *Stewart Bros.* v. *Ransom*, *supra*, 204 Ala. 589 [87 So. 89]; *Sell* v. *McAnaw*, 138 Mo. 267 [39 S.W. 779, 780]; *Smith* v. *Lindsey*, 89 Mo. 76, 79-80 [1 S.W. 88]; *Wade* v. *Thompson*, 52 Miss. 367, 372; *Caldwell* v. *Neely*, 81 N.C. 114, 116; *Ryan* v. *Martin*, 91 N.C. 464, 470; *Reid* v. *Anderson*, 13 App.Cas. (D.C.) 30, 32.)

The problem under these rules of practice is simply one of the burden of proof and the burden of going forward with the evidence. The proof by one party of better title from a common source makes out a prima facie case for him, and the burden of establishing a superior title from some other source is then cast upon the other party. Under these rules if cross-complainants had rested upon proof of better

title from the common source without introducing the Gansevoort-Nazzari deed, the burden would have been upon appellant, if he relied upon the Gansevoort-Nazzari deed, to prove that the Gansevoort-Nazzari title was paramount to the title from the common source. It would seem that the fact that the Gansevoort-Nazzari deed was introduced by cross-complainants on their case would not relieve appellant of this burden.

We need not rest our decision on this ground however because we are satisfied that the finding of title in cross-complainants by adverse possession is supported by the evidence. At a time when title to the entire tract stood in the name of respondent C. M. MacGregor under the color of title of the deeds introduced on cross-complainants' case, Mac-Gregor, more than five years before the commencement of this action, from time to time had caused loose dirt to be hauled upon the land and spread out to level it for building. He then commenced the construction of homes upon the land so filled and leveled. The construction of five of these buildings was commenced over five years, and of the other nine slightly less than five years, before the filing of this action. The lots upon which these fourteen homes were built were conveyed by MacGregor in one instance immediately, and in the others through intermediate grantees, to the cross-complainants herein. It was stipulated that taxes were paid on all fourteen lots by the cross-complainants and their predecessors in interest for the five years immediately preceding the commencement of this action, i.e. for the years 1936-'37 to 1940-'41, inclusive. The distinction between the character of possession necessary to constitute adverse possession where the entry is under color of title and without color of title is fixed by code provision and well settled in law. (Code Civ. Proc., §§ 323, 324, 325; 1 Cal.Jur. 580-583.)

The preparation of the tract for building by MacGregor at a time when he had color of title to the block as a whole, by dumping loose soil thereon and spreading it out to make the tract level for building, was a sufficient occupancy to support a finding that it started the period of adverse possession running in his favor. (*Goodrich* v. *Mortimer,* 44 Cal. App. 576 [186 P. 844]; *Rideout* v. *Covillaud,* 39 Cal.App. 417 [179 P. 211].) The filling of the land was the first step in a continuous occupancy 'which was followed with no undue delay by the construction of the buildings, their subsequent

conveyance and their actual use and occupation as dwelling houses. It is sufficient to establish adverse possession, even where the entry is not under color of title, that the land be "cultivated or improved in the manner and to the extent usual in the case of similar property." (*Gray* v. *Walker,* 157 Cal. 381, 385 [108 P. 278].) In the case of unimproved town property the preparation of that property for the building of residence buildings thereon, the construction of such buildings without undue delay and their occupancy for dwelling purposes when completed obviously falls within this rule. "Actual possession may be denoted by the making of improvements which are permanent in their nature, are usual in the case of similar property, and are such as to indicate exclusive management and control, rather than a mere temporary trespass." (2 C.J.S. 542-3; 2 C.J. 58-9.) The fact that the buildings in some instances may not have been occupied continuously after their completion, would not, standing alone, destroy the continuity of the possession, so long as there was no intrusion by any other person upon the land or disturbance of the claimants' possession thereof. (*Montgomery & Mullen L. Co.* v. *Quimby,* 164 Cal. 250, 253 [128 P. 402].)

The descriptions in certain deeds in the chain of title of some of the cross-complainants commenced on the "westerly" line of Masonic Avenue. This was a clerical error obvious on the face of the deeds from a consideration of the rest of the descriptions, which make it clear that "westerly" should read "easterly." The trial court properly so concluded. (9 Cal.Jur. 301.)

Complaint is made of the admission in evidence of the judgment in *MacGregor* v. *Knowlden, supra,* and of the opinion of this court in the same case. Since we have concluded that the judgment herein is otherwise amply supported, the error, if any, in admitting such evidence was not prejudicial.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied June 3, 1944, and appellant's petition for a hearing by the Supreme Court was denied June 29, 1944.