[Civ. No. 12573. First Dist., Div. One. Oct. 1, 1945.]

LILA WAGNOR, Respondent, v. N. A. BLUME et al., Appellants.

96

Robert E. Knowlden, Johnson & Harmon and Johnson, Harmon & Stirrat for Appellants.

Ridley D. Stone, Matt Wahrhaftig and T. P. Wittschen for Respondent.

KNIGHT, J.—Prior to 1929 litigation was started over the title to long strips of land ten feet wide, adjoining the two sides of and running parallel to the right of way of the Atchison, Topeka and Santa Fe Railway Company, as it runs through the city of Albany in the county of Alameda; and in 1941 the present action was brought by the respondent, Lila Wagnor, to quiet title to a portion of the strip, 3,000 feet long, lying on the east side of the right of way, and extending from Solano Avenue, formerly Main Street, south to Cordonices Creek. The answer of appellants disputed respondent's title thereto and alleged that the appellant N. A. Blume was the owner of the property. The real issue presented, upon which the decision in the case turned, was whether the right of way granted to the Santa Fe's predecessor in 1884 was forty or sixty feet in width. Respondent claimed that it was forty feet wide, whereas appellants claimed it was sixty feet wide. The Santa Fe was not made party to the action, but it appears from the record that it has always taken the position that the

width of its right of way through Albany was and is but forty feet. This same issue as to the width of the right of way has been twice previously litigated; first, in an action brought by C. M. MacGregor against Bertha McKenzie Knowlden et al. (102 Cal.App. 42 [282 P. 438], decided in 1929, hearing by the Supreme Court denied) ; and again in an action brought by the appellant N. A. Blume against MacGregor et al. (64 Cal.App.2d 244 [148 P.2d 656], decided in 1944, hearing by the Supreme Court denied). In each of those cases it was held that the right of way was but forty feet wide. In the present case the evidence relating to the width of the right of way was the same as that upon which the judgments in those cases rested; and here, as in those cases, the basis of the trial court's decision was that the right of way was but forty feet wide. Accordingly, judgment was entered in favor of respondent and against appellants, and from that judgment this appeal is being prosecuted.

A reading of the decisions rendered on those two appeals will give a full comprehension of all the background facts of the present case, except for certain matters which will be hereinafter noted. In the first case, *MacGregor* v. *Knowlden, supra,* there were four parcels of land involved: No. 1, the strip north of Main Street (now Solano Avenue) and west of the right of way; No. 2, the strip north of Solano Avenue and east of the right of way; No. 3, the strip south of Solano Avenue and west of the right of way (part of which was again involved in *Blume* v. *MacGregor, supra*), and No. 4, the strip south of Solano Avenue and east of the right of way, which strip is involved in the present case. In the first case it was held that the right of way was forty feet wide, and MacGregor prevailed as to Parcels 1, 2 and 3 (with one exception not here involved), and as against MacGregor, Knowlden prevailed as to Parcel 4, this holding being based on the fact that MacGregor's title stopped on the west side of the right of way. Such holding, however, is not determinative of the issues presented in the present case. Subsequent to the rendition of the decision on the first appeal, Blume succeeded to the rights claimed by Bertha McKenzie Knowlden; and in the second case Blume relitigated the issues presented in the first case, and it was again held that the right of way was forty feet wide. As stated, the same evidence relating to that issue was introduced in the present case, and for the third time it was

held that the right of way was and is forty feet wide. After having examined the record herein and considered the points urged by appellants in support of the appeal, we find no reason to question the soundness of the conclusion reached on either of the other appeals as to the width of the right of way.

Both parties herein trace their titles back to a common grantor, George Sterling. Tracing the two chains of title in more detail, and going back of the Sterling title, the record shows the following: In 1884 the Pacific Improvement Company, owner of two-thirds, and Maria Hall, owner of one-third (her interest later being acquired by H. W. Carpentier), made identical deeds conveying to the California and Nevada Railroad Company a right of way over lands of which the grantors were then the owners. Certain calls in the description were omitted from those two deeds, but on the two former appeals the effect of such omission was fully considered, and it was determined that for the reasons set forth therein the right of way was fixed at forty feet. In 1906 Pacific Improvement Company and Carpentier conveyed their interests to George Sterling in lands on both sides of the right of way previously granted, including the lands in dispute, and excepting 5.73 acres ''for the right of way to The California and Nevada Railroad Company Feb. 23, 1884.'' In 1906 Sterling and his wife conveyed by deed to the North Berkeley Land Company three parcels of land, including a 52.30-acre parcel which ran from Cordonices Creek (the southern boundary of the property in dispute) north to Main Street, under a description which read in part as follows: ''Beginning at a point formed by the intersection of the center line of Cordonices Creek with the easterly line of the right of way of the Atchison, Topeka and Santa Fe Railway . . .'' and excepting therefrom a 300-foot strip ''parallel to the right of way of the Atchison, Topeka and Santa Fe Railway. . . .'' The other two parcels are not here involved. On June 8, 1908, Sterling and his wife and the North Berkeley Land Company conveyed to the Realty Syndicate 25.67 acres, part of which had been included in the former deeds, and which also included the 300-foot strip which had been excepted from the former conveyance. The point of beginning in this deed is ''the most southern corner of that certain 52.30 acre tract of land heretofore conveyed to the North Berkeley Land Company by George and Carrie R. Sterling.''

It is under this 1908 deed from Sterling to the Realty

Syndicate that respondent deraigns her title. While the point of beginning in this deed differs from the point of beginning in the deed from Sterling to the North Berkeley Land Company covering the 52.30-acre tract, yet this point of beginning, as stated in the deed, is "the most southern corner of that certain 52.30 acre tract of land heretofore conveyed to the North Berkeley Land Company by George and Carrie R. Sterling" and the description then goes on to read, "down the center of Cordonices Creek along the Southern boundary line of the said 52.30 acre tract . . ." and thence *"to the Southwestern corner of the said 52.30 acre tract;* thence along the Western boundary line of said tract. . . ." (Italics added.) A comparison of the descriptions in the 1906 deed and the 1908 deed will show that the point of beginning in the 1906 deed is the same point referred to in the 1908 deed as "Southwestern corner of the said 52.30 acre tract"; therefore, the west line of the 52.30-acre tract is also the west line of the 25.67-acre tract of the 1908 deed, and this west line of both tracts is the east line of the railroad right of way.

The remaining deeds in respondent's chain of title all tie to the same western line of the 25.67-acre tract, which, in turn, is the eastern line of the right of way. The devolution of title from the 1908 deed is as follows: The Realty Syndicate conveyed a smaller parcel of 3.24 acres, including the strip in dispute, to San Francisco-Oakland Terminal Railways in 1914, which mortgaged the property to Mercantile Trust Company in that year, and when this mortgage was foreclosed a certificate of sale was issued and later a deed to Messrs. Goodfellow, Olney and Brobeck, who in 1923 conveyed to Key System Transit Company. The latter conveyed the land to The Oakland Bank as trustee to secure a bond issue in 1923, and the lien created thereby was in turn foreclosed and a commissioner's certificate and then a deed were issued in 1931 to Railway Equipment and Realty Co. Ltd. The Key System Transit Company also quitclaimed the property to the Railway Equipment and Realty Co. Ltd. in 1930. This company then conveyed the property described in the second cause of action to respondent, and the property in the first cause of action to National Service Company, which thereafter conveyed it to respondent.

Appellants' chain of title did not start until 1925. During that year Bertha McKenzie Knowlden obtained a quitclaim

deed from Sterling covering the strip in dispute. In 1930 she conveyed to Bernice Kump, who in 1939 conveyed to the appellant N. A. Blume (the other appellants are encumbrancers claiming under Blume). Thus if, as held in all three cases, the right of way was forty and not sixty feet wide, then Sterling's grant to respondent's predecessor in 1908 extended to the easterly boundary of such forty-foot right of way; and that being so Sterling, in 1925, retained no title to the ten-foot strip which he purported to quitclaim to Bertha McKenzie Knowlden; and the trial court herein so held. Specifically it found that Carpentier and the Pacific Improvement Company and Sterling were, and each of them was, a common source of title under which respondent and the appellants claimed, and that they claimed from no other source; that prior to the deed from Sterling to Bertha McKenzie Knowlden, Blume's predecessor, Sterling had parted with all his right, title and interest in and to the ten-foot strip to the Realty Syndicate, and that by mesne conveyances from the latter, title now vested in the respondent.

The evidence is amply sufficient to support the trial court's decision. In addition to the facts hereinabove narrated and the matters of record set forth in the decisions rendered on the two former appeals, deeds and pertinent maps were here produced by Santa Fe officials showing a right of way of only forty feet. There was also evidence showing that the right of way as it presently exists is in the same position as it was in 1906, and there was a location on the ground of the center line of the single track on the right of way, from which it was demonstrated that the right of way was but forty feet wide.

At the oral argument on the appeal counsel for appellants pointed out that the 1908 deed under which respondent deraigned title, besides containing the description hereinabove quoted, described the property therein conveyed by metes and bounds; and he contended that a checking of the calls set forth in the deed proved that the description by metes and bounds did not close. This same point was made on the appeal in *MacGregor* v. *Knowlden, supra;* and as the court there pointed out the property was first described by four monuments, and the distances and calls were given afterwards as particulars of the general description. One of the monuments was the boundary line of the right of way; another was the county road; the third was the "Southwestern corner of

that certain 25.33 acre tract described in 2nd Exception in that certain deed from George and Carrie R. Sterling to J. H. Spring dated December 7, 1906 and recorded in Liber 1248 of Deeds at page 342, Alameda County Records''; and the fourth was the center of Cordonices Creek. The court then went on to hold in conformity with the well-settled rule that monuments are controlling over conflicting calls; and in referring to the right of way boundary line as a monument, the court said (102 Cal.App. at p. 50) : ''A known boundary line may be a monument as well as a physical object upon the ground (*Bartlett Land Co.* v. *Saunders,* 103 U.S. 316 [26 L.Ed. 546, see, also, Rose's U.S. Notes]), and when such boundary line is used as a monument, the true boundary line is indicated rather than the conventional line. (*Umbarger* v. *Chaboya,* 49 Cal. 525, 538.)'' Therefore, even though, as appellants contend, the calls did not show a closed description they were not controlling over the monuments.

Appellants also urge numerous technical points for reversal. But an examination of them shows that they are without merit. Among them are the following :

 They contend that there are missing links in respondent's chain of title in that one of the deeds named as grantee the Mercantile Trust Company of San Francisco, whereas the commissioner's certificate of sale refers to the Mercantile Trust Company of California, and that the commissioner's deed, so far as the copy introduced in evidence shows, makes no identification of the particular action to which it refers. Obviously the trial court was justified in holding that these matters did not constitute a break in respondent's chain of title.

 They further contend that respondent failed to produce the judgment and execution needed to support the alleged commissioner's certificate of sale or the commissioner's deed; but the deeds themselves were prima facie evidence of title. (Code Civ. Proc., § 1928.)

 It is also contended that the respondent failed to meet the burden of proof in that she introduced no evidence to show that the property described in the quitclaim deeds (the last link in respondent's chain, by which she acquired title) was conveyed by any other deed in the chain. This question again depends on whether the right of way was sixty or forty feet, and the determination that it was forty feet ties it in with the other deeds.

It is next contended that respondent failed to prove a proper case for the "common grantor" rule to apply, one point being that the trial court erred in finding that the parties claimed under a common source of title. The same point was made in *Blume* v. *MacGregor, supra,* and it was held that a plaintiff makes a prima facie case by evidence connecting the defendant with a common source of title and proving in himself a better title from that source; and that where both parties derive title from a common source the burden is placed upon the party having the inferior title from the common source, if he relies upon title from another independent source, to prove that the title acquired from the independent source is paramount to the title in the common source; the proof by one party of better title from a common source makes out a prima facie case for him, and the burden of establishing a superior title from some other source is then cast upon the other party.

Another point urged is that respondent should have pleaded that she was going to rely on the rule of common grantor. Such would not appear to be necessary. No authority has been cited so holding, and in *Blume* v. *MacGregor, supra,* where the cross-complainant relied upon the rule of common grantor, there was no such pleading.

The claim is made that because the North Berkeley Land Company is a party to one of the deeds the rule of common grantor cannot be applied; but, as respondent points out, the parties owned separate parcels of land, and apparently joined in giving a single deed simply for convenience. Under such circumstances, no reason appears why respondent would be denied the application of the common-grantor rule.

Appellants argue that the rule of common grantor does not apply because there are several quitclaim deeds in the alleged chains of title. However, as respondent points out, although there is some authority for the statement that when the first deed out is a quitclaim, the rule should not apply. Here the first deed out was a grant, and therefore the rule can be applied.

Also in this regard appellants seem to contend that respondent's failure to locate some of the exceptions in the deeds prevented the application of the common-grantor rule. The record shows that during the trial counsel for appellants stipulated that respondent would not have to locate any excep-

tions other than the exception of the right of way. Appellants therefore are in no position to complain of the failure to locate any other exceptions.

Appellants argue that respondent is estopped under the provisions of section 1962, subdivision 2 of the Code of Civil Procedure, which provides as follows: "The following presumptions . . . are deemed conclusive: The truth of the facts recited, from the recital in a written instrument between the parties thereto, or their successors in interest by a subsequent title." The reason for this argument is that in certain deeds and maps the right of way is referred to as being sixty feet wide. However, as respondent states, the various parties to the written instruments to which appellants allude are not the parties here before the court. There are erroneous references to a sixty-foot right of way in the various maps and instruments, but these cannot prevail over the actual located monument, the right of way itself.

Appellants claim that the descriptions in the complaint, findings and judgment are so uncertain and ambiguous that the extent of the land adjudged to respondent cannot be ascertained. However, as held in *Blume* v. *MacGregor*, *supra*, "In general if a competent surveyor can take the deed and locate the land on the ground from the description contained therein, with or without the aid of extrinsic evidence, the description will be held to be sufficient." Such was the case here; therefore there is no merit in the contention.

The various other points made are of lesser importance and do not call for any discussion. Suffice it to say that they are either incidental to those already discussed and decided, or have been examined and found to be wholly without merit.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied October 31, 1945, and the petition was ordered stricken from the files as being scandalous in nature. Appellants' petition for a hearing by the Supreme Court was denied November 29, 1945.